In Equity.

HERBERT A. FOGG *vs.* LINWOOD C. TYLER.

Penobscot. Opinion April 8, 1912.

*Banks and Banking. Deposits. "Special Deposits."*

Bank deposits are either general or special, being "special" where the bank merely assumes custody of the funds, without authority to use them, and where the depositor is entitled to a return of the identical money, in which case the relation is that of bailor and bailee, and not creditor and debtor.

There was a special, and not a general, deposit of a package of money in a bank, where the depositor left it merely until he should return from a trip, marking his initials on the wrapper with a pencil, and where the cashier issued a receipt, showing that the money was received for safe-keeping, entitling the depositor to reimbursement in full on dissolution of the bank.

A contract for a special deposit in a bank need not be in any particular form, it being governed, like all other contracts, by mutual intention and understanding of the parties.

The maker of a special deposit of $500 in a bank is not prevented from recovering that amount in full on dissolution of the bank, because the original package cannot be found, where all the moneys received after that deposit were general deposits, and the bank's cash did not fall below $500.

In equity. On report. Petition sustained.

Petition filed by George W. Maxfield in the matter of the receivership of Tyler, Fogg & Co. asking the court to issue an order directing the receiver of that firm to restore to him a package of money containing $500 in bills, which the petitioner deposited with the cashier of the firm for safe keeping April 22, 1911. At the conclusion of the evidence the case was reported to the Law Court for determination.

The case is stated in the opinion.

*E. C. Ryder*, for petitioner.

*Charles H. Bartlett*, Receiver, pro se.

*Edgar H. Simpson*, for committee of unsecured creditors.

SITTING: WHITEHOUSE, C. J., CORNISH, KING, BIRD, HALEY, HANSON, JJ.

WHITEHOUSE, C. J. This is a petition filed by George W. Maxfield in the matter of the receivership of Tyler, Fogg & Co. asking the court to issue an order directing the receiver of that firm to restore to him a package of money containing $500 in bills, which the petitioner deposited with the cashier of the firm for safe keeping April 22, 1911.

It is contended on the part of the petitioner that this was a special deposit which was not to be mingled with the general funds of the bank and form a part of its disposable capital, but was to be kept by it and be specifically returned. On the other hand, it is contended in behalf of the receiver that this was an ordinary general deposit of money with the bank which transferred the title to the bank and created the relation of debtor and creditor between the bank and the petitioner.

It is not in controversy that on the 22nd day of April, 1911, the petitioner, George W. Maxfield, hastily entered the banking rooms of Tyler, Fogg & Co. and delivered to the cashier a package of bills containing $500, taking from him a receipt of the following tenor:

"April 22, 1911.

Received of George W. Maxfield $500 for safe keeping.

$500. ·                    P. pro. TYLER, FOGG & Co.

RALPH P. PREBLE, *Cashier*."

According to the testimony of the petitioner, the deposit was made under the following circumstances. He received a telegram in the early afternoon of Saturday, April 22, requesting his presence in New York the next morning, and in order to comply with this request, it would be necessary for him to take the 1.50 train at Bangor in seventeen minutes from the time he received the telegram. He had lately received the package of $500 in bills from the Augusta Trust Company with the ordinary bank wrapper around it marked $500. On this wrapper, he marked his initials G. W. M. with a pencil, and on his way to the railroad station, stepped into the banking rooms of Tyler, Fogg & Co. and delivered the package to the cashier, Mr. Preble, stating that he wanted to leave that money there; that he didn't want to buy anything and didn't want to sell anything, he simply wanted to leave that package there until he got back from New York. The cashier replied, "Mr. Maxfield, you can have the money any moment you call for it." The petitioner testifies that the cashier started to open the package and he said to him "Don't meddle with that, don't meddle with that, that is all right." "He says, 'All right, I just wanted to count it,' and he counted it and wrote the receipt pretty fast for I had only seven minutes."

There is no necessary conflict between the testimony of the petitioner and that of the cashier in relation to the material facts. The cashier does not recollect seeing the initials of Mr. Maxfield upon the Bank wrapper but would not say they were not there. He also admits that it would be his natural course to put a strap around the bills and put them away as a package but would not say that he did not put the same strap around the package if he took it off. The cashier also states that he does not recollect the petitioner's request that he should not meddle with the package.

The petitioner returned from New York on the next Saturday afternoon, April 29, but not in season to call for his package of money that day. The great fire of April 30th occurred the next day, Sunday, and rendered it impossible to open the vault of the firm until May 25th. But before the vault was opened, the peti-

tioner made a demand upon the senior member of the firm for his money and was informed that it would be delivered to him as soon as the vault was opened. But before the opening of the vault, the firm was dissolved by a decree of court and a receiver appointed who took over all the assets of the firm. From the time the money was deposited with the firm April 22, until the close of the banking hours on April 29, cash was received and paid out by the firm in the usual course of its banking business. When the vault was opened by the receiver, there was on hand in the vault in cash $1620.21 and at no time after the petitioner's deposit to the time the assets were taken over by the receiver, was there less than $500.

At the time the vault was opened there were two $500 packages in it but the cashier was unable to state whether either of them had the petitioner's initials upon it or not. The cash was kept in the vault and the checks received were deposited daily with the Kenduskeag Trust Company, and at the time the receiver took possession, there was on deposit in that Company the sum of $2859.55 in addition to the amount of cash above stated in the vault of Tyler, Fogg & Co. The cashier expressly states that after he counted the petitioner's money he deposited it in the cash drawer, where all the cash receipts were deposited that were received during the week following the deposit in question; but there is no evidence that any other package of money was deposited that week expressly "for safe keeping," or under circumstances similar to those of the petitioner's deposit. So far as appears, all other moneys received by the firm prior to the closing of its vault, were general deposits which created the relation of debtor and creditor between the depositor and the firm.

In response to an inquiry by counsel for the defendant, whether in his opinion, judging from all he knew of the dealings in the bank, the petitioner's package was in the bank at the time the vault was closed, the cashier says, "Couldn't state; I have no opinion on that subject."

At close of the testimony, by agreement of the parties, the questions involved were reported for the determination of the Law Court.

It is well recognized and familiar law that "Deposits made with bankers are either general or special. In the case of a special deposit the bank merely assumes the charge or custody of property

without authority to use it, and the depositor is entitled to receive back the identical money or thing deposited. In such case the right of property remains in the depositor and if the deposit is of money the bank may not mingle it with its own funds. The relation created is that of bailor and bailee and not that of creditor and debtor." *Alston* v. *State of Alabama,* 92 Ala., 124; 3 Am. & Eng. Enc. of Law, 324; *McLain* v. *Wallace,* 103 Ind., 562 (5 N. E. 911-12); *Pattison* v. *Syracuse, Natl. Bank,* 80 N. Y., 82-90.

In *Mut. Acc. Ass'n.* v. *Jacobs,* 141 Ill., 261, the court said: "As we understand the question there is a wide difference between a special and a general deposit, as these terms are understood not only by bankers but by the public who are transacting business daily with the banks. Where money of any description is deposited in a bank and the identical gold, silver or bank bills which were deposited are to be returned to the depositor, and not the equivalent, the deposit will be special."   .   .   .   .

"Where a package of bills or currency is received in the bank as a special deposit, the identical money to be returned, the bank has no authority to use the money in its business." So in *National Bank* v. *Peck,* 127 Mass., 298, the court said:

"Money deposited in a bank does not remain the property of the depositor upon which the bank has a lien only, but it becomes the absolute property of the bank. The bank being the absolute owner of the money deposited and being a mere debtor to the depositor for his balance of account holds no property in which the depositor has any title or right." See also *Grissom* v. *Bank,* 87 Tenn., 350; *School Dist.* v. *First Natl. Bank,* 102 Mass., 174; *Clark* v. *Northampton Natl. Bank,* 160 Mass., 26. In *Boettcher* v. *Colorado, Nat'l. Bank,* 15 Col., 16, the court thus speaks of a special deposit: "A deposit is not general, but a trust fund when there is an expressed agreement to that effect, or there are circumstances which give to the transaction the nature of a special deposit."

When these well settled rules of law which are well understood by men of affairs and constantly observed in the practical management of banking business are applied to the facts and circumstances above stated in the case at bar, it is the opinion of the court that the plaintiff's contention must be sustained and that his delivery of the package of $500 in bills to the cashier of Tyler, Fogg & Co. must be deemed a special deposit which created the relation of

bailor and bailee between the parties, and not a general deposit which created the relation of debtor and creditor between them. It became a special trust fund to be held by the bank for the petitioner, and restored to him on demand a few days later. It did not become a part of the general funds of the bank to be used in the conduct of its business.

The law prescribes no particular formula for the contract involved in making a special deposit. Like all true contracts it grows out of the mutual intention and understanding of the parties; and the sources of evidence and means of proof are no more difficult or complex than in most other inquiries constantly arising in the courts. The purpose and terms of the deposit may be explicitly stated, or the intention of the parties may be inferred from their declarations considered in connection with their conduct and all of the circumstances. In this case the declarations of the petitioner at the time of the delivery of the money to the cashier, unmistakably show that he understood the deposit to be a special one and that the identical money was to be returned to him on demand The receipt written by the cashier himself, stating expressly that the money was received "for safe keeping," is of the highest significance in its tendency to prove that the cashier had the same understanding of it. The term "safe keeping" aptly expressed the duty imposed upon the cashier as bailee of a special deposit, but was wholly inappropriate and superfluous as applied to a general deposit which was to be mingled with other funds and become a part of the property of the bank. The evidence cannot be consistently reconciled with the proposition that the money was left as a general deposit, but fully warrants the conclusion that the package was received "for safe keeping" to be held in trust as the property of the petitioner.

But it has been seen that neither of the $500 packages found in the vault after it was opened, nor any other money found there, has been identified by any distinguishing marks as the money deposited by the petitioner; and it is contended in behalf of the defendant that in any event the petitioner is not entitled to recover the sum of $500 in this proceeding, for the reason that his money having been mingled with the moneys of other depositors and paid out indiscriminately, can no longer be identified in the hands of the receiver. But it has been seen that all of the moneys received

from depositors after the receipt of the petitioner's package were general deposits which became the property of the bank, and that the cash in the vault was not less than $500 at any time during that week. The petitioner's package was the only special deposit and the only trust fund held by the firm at that time. The petitioner's difficulty arising from a failure to identify his money by distinguishing marks is therefore readily solved by an application of the established principle of equity that "when one makes a draft from a fund composed partly of his own funds and partly of the money of another, the presumption is that the draft was intended to be made and was made from the drawer's own funds." *Hall* v. *Otis,* 77 Maine, 125. In *Knatchbull* v. *Hallett,* L. R. 13 Chan., Div. 696, it was decided that if money held by a trustee has been mingled with his private funds in his bank account the cestui que trust can follow it and has a charge on the balance in the banker's hands. "It was further held that the rule attributing the first drawings out to the first payments in, does not apply except as between the moneys of different cestuis que trust, whose moneys are commingled by the common trustee, and that as between the individual funds and trust funds, the drawer must be taken to have drawn his own money in preference to the trust money." The principle is thus stated in 2nd Perry on Trusts, (2nd ed.) 837. "If trust money is mixed in the same parcel with the trustee's own money, it may be said that the trust money has run into the general mass and has become absorbed and that the cestui que trust has no lien; but such cannot be the case. Although every identical coin cannot be ascertained in a given mass, yet there being so much trust money in the parcel, the cestui que trust is entitled to so much of it. If a trustee deposits trust moneys in a bank to his own credit, the courts will disentangle the accounts and give the cestui que trust what belongs to him." This principle has received the emphatic approval of the Supreme Court of the United States in *National Bank* v. *Insurance Co.,* 104 U. S., 54, and of our own court in *Houghton* v. *Davenport,* 74 Maine, 596. See also *Lyman* v. *Bank,* 98 Maine, 448; *First Nat'l Bank* v. *East Trust & Banking Co.,* 108 Maine, 79, 79 Atl., 4; *Farmers' Bank* v. *King,* 57 Pa., 202 and *Harrison* v. *Smith,* 83 Mo., 210.

It thus appears from this beneficent doctrine of equity that when trust money is mingled in the same parcel with the trustee's own

funds, the question is not necessarily whether the trust money can be identified by distinguishing earmarks, but whether it can be traced into the hands of the trustee "either in its original or its altered state." The petitioner's money was received by the firm of Tyler, Fogg & Co. in a fiduciary capacity, and mingled with its private funds. Moneys paid out during the week following April 22, are presumed to have been paid from the private funds of the firm, and not from the petitioner's trust money. The entire amount of cash on hand at the time the vault was opened was charged with a trust in favor of the plaintiff. The presumption is that $500 of the $1620.21 in money found in the vault and turned over to the receiver, belonged to the petitioner. As trustee of the petitioner for his $500, the firm would have been bound to restore that sum to him on demand if a receiver had not been appointed. A demand was made by the petitioner upon the receiver for the return of his money soon after the latter took possession of the assets of the firm on the ninth day of June, 1911. The receiver is now bound to restore to the petitioner the sum of $500 deposited with the firm by him April 22, 1911, and it is ordered that the sum of $500 be paid to the petitioner by the receiver with interest thereon from the fifth day of September, 1911, the date of the petition. The certificate must accordingly be,

*Petition sustained.*

*Claim for $500 and interest allowed.*