In re Warren's Bank: Commissioner of Banking, Appellant, vs. Chicago, Milwaukee, St. Paul & Pacific Railroad Company, Respondent.

*September 13—October 11, 1932.*

For the appellant there was a brief by *McCaul & McCaul* of Tomah, and oral argument by *Wm. R. McCaul.*

For the respondent there was a brief by *Bender, Trump, McIntyre & Freeman* of Milwaukee and *Higbee & Higbee* of La Crosse, and oral argument by *J. E. Higbee.*

OWEN, J. It appears that the Chicago, Milwaukee, St. Paul & Pacific Railroad Company and its predecessors, for many years, had a considerable payroll at Tomah, occasioned by the maintenance of a bridge and building department in that city. Warren's Bank was a banking institution located at Tomah. It was the usual custom of the railroad company to pay its men employed at Tomah upon the 1st and 15th of each month. This was accomplished by drawing its checks in favor of the respective employees upon banks located either in Chicago or Milwaukee. These checks were sent to the superintendent, or other person in charge at Tomah, and by him distributed to the employees. For many years prior to the closing of Warren's Bank it had been the custom of the treasurer of the company to send to Warren's Bank an amount of money estimated to be sufficient to cash these pay checks. This money was sent in currency a day or two before pay day. As these pay checks were presented at Warren's Bank they would be paid by the bank. These checks were not sent through the clearing house by Warren's Bank, but were kept by it for a number of days until, presumably, all of the pay checks had been paid. The bank would then return to the treasurer of the company the checks so paid by it with a remittance to cover the amount forwarded by the company and not paid

out by the bank. These checks were indorsed by the bank payable to the order of the treasurer of the company so that they could not be used by any one else.

Warren's Bank was taken over by the commissioner of banking before the opening of business on the morning of September 19th. The bank had received $3,000 from the company with which to pay the September 15th pay checks. At that time there had been paid out on the September 15th pay checks the sum of $1,889.93, leaving a balance in the bank of $1,110.07 of the deposit made by the company to enable the bank to handle its September 15th pay checks. The question presented is whether the balance so remaining constitutes a general or special deposit.

A deposit in a bank is general or special, depending upon the contract of the parties at the time the deposit is made. It is presumed to be general in the absence of an agreement to the contrary, as such deposits are deemed most advantageous to the depositor and most consistent with the general objects, usages, and course of business of banks. 3 Ruling Case Law, p. 517; *Fogg v. Tyler,* 109 Me. 109, 82 Atl. 1008; *Southern Surety Co. v. U. S. Cast Iron P. & F. Co.* 13 Fed. (2d) 833. This rule places the burden upon one claiming the deposit to be special.

There is no evidence in this case to show the nature of the original agreement between the railroad company and the bank at the time of the establishment of this custom. The only testimony in the case is that of the cashier, who had been connected with the bank since 1923. He testified that the custom originated long before he became connected with the bank and that it continued as above indicated from 1923 until the bank closed. The nature of the original agreement, therefore, must be inferred from the manner in which the custom was carried on by the railroad company and the bank. First of all, it is to be noted that the pay

checks were not drawn on Warren's Bank. There is no testimony that the railroad company ever drew a check on Warren's Bank. The checks were drawn by the treasurer of the company upon metropolitan banks. The checks were not handled through the clearing house by Warren's Bank in the usual manner of handling checks. It simply cashed them when presented at its window, kept them for a few days, indorsed them payable to the treasurer of the company, and sent them, together with a remittance to cover the balance of the deposit, to the treasurer of the company, thus closing the transaction. The transaction involved in the cashing of each payroll was thus closed in every instance before the next payroll became due.

It was the duty of the company to see that its men at Tomah were paid. No duty devolved upon Warren's Bank to handle these pay checks. In honoring and paying them the bank was lending assistance to the company in the discharge of a duty which it owed to its employees. From all of these considerations it is inferable, if not perfectly apparent, that the deposit was made for a specific purpose, and that purpose was the cashing of the pay checks of the company, drawn not upon Warren's Bank but upon other banks, which Warren's Bank was under no obligation to honor or handle.

It seems to be well settled that a deposit made in a bank for a specific purpose, and for that alone, partakes of the nature of a special deposit and does not establish the relation of debtor and creditor between the depositor and the bank, but establishes a fiduciary relation which is sometimes declared to be that of principal and agent, while some courts hold that a trust relation is created. The numerous authorities sustaining this principle are found cited in *Southern Surety Co. v. U. S. Cast Iron P. & F. Co.* 13 Fed. (2d) 833; *Morton v. Woolery,* 48 N. Dak. 1132, 189 N. W. 232,

24 A. L. R. 1109, and note following; 5 Michie, Banking, sec. 332. Such a deposit is called a specific as distinguished from a special deposit.

The earlier cases seem to have held that a special deposit must contemplate the return of the identical thing deposited even though it was money, and if it became commingled with the funds of the bank its identity was lost and it was nothing more than a general deposit. Many cases so held without giving consideration to the terms of the contract of deposit. However, the idea that the commingling of moneys with the funds of the bank destroyed the character of the special deposit because the deposit could not be identified, was exploded in *Fogg v. Tyler,* 109 Me. 109, 82 Atl. 1008, where it was held that the general principles relating to trust funds should be applied, and so long as the amount of money in the bank exceeded the amount of the deposit it should be presumed that all moneys paid out by the bank were paid out of its own and not out of trust funds. No doubt because the necessities of modern business required greater freedom on the part of business men to transact business through and with their banks, it gave rise to the principle that where funds are deposited with a bank for a special purpose the title does not pass to the bank, the ordinary relation of creditor and debtor is not created, but the relation becomes one of principal and agent, or a relation of trust. So now it is generally held that where there is a deposit in a bank for the purpose of meeting certain checks or classes of checks, the money thus deposited must be applied for the purposes for which it was deposited. See cases cited to this proposition in a note to be found in 24 A. L. R. 1111.

We think it plain that the money forwarded every two weeks by the railroad company to the bank was forwarded for the special and exclusive purpose of enabling the bank

to handle the pay checks of the company with a minimum of inconvenience to the bank, and that in doing so the bank acted as the agent of the company in placing in the hands of the employees of the company the cash which the company owed its employees. It is clear to us that the bank did not obtain title to this money, nor did it become the mere creditor of the company. It held this money as a fiduciary. Whether the fiduciary relation was that of principal and agent, or mere trustee, is not material.

*By the Court.*—Order affirmed.