STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. FARMERS & MERCHANTS STATE BANK, E. H. LUIKART, RECEIVER, APPELLANT: L. H. CHENEY, INTERVENER, APPELLEE.

FILED OCTOBER 20, 1933. No. 28609.

*F. C. Radke, Barlow Nye, G. E. Price, C. D. Ritchie* and *Magdelene C. Radke,* for appellant.

*L. H. Cheney* and *Butler & James, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and SHEPHERD, District Judge.

PAINE, J.

This is an action to establish a preferred claim with the receiver of the Farmers & Merchants State Bank of McCook, in the sum of $2,700, by reason of a deposit to the credit of the intervener, L. H. Cheney, referee in partition.

In June, 1931, L. H. Cheney, a practicing attorney at McCook, was appointed referee in partition by the district court in the case of Harsch v. Harsch. He filed his report, showing that the real estate could not be partitioned, which report was approved by the court, and he was directed to sell the property. The district court fixed the amount of his bond for the sale of the property at $25,000. The referee then interviewed Dale S. Boyles, cashier of the Farmers & Merchants State Bank of McCook, and offered that, if Boyles would sign the $25,-000 bond with him as referee, the money received from the sale should be deposited in his bank until it was ordered paid out by the district court. Thereupon, Mr. Boyles signed the bond, together with L. Suess. The land was advertised for sale, and sold August 17, 1931, on which day the referee received two checks, one from Leonard Harsch for $1,380, and one from Rudolph F. Harsch for $1,320, each being a part payment on land purchased by each of them. Upon the same day, these checks, which had been drawn upon the Bartley State Bank, were deposited in Mr. Boyles' bank, the deposit slip showing the deposit as being made by "L. H. Cheney, Referee Harsch Estate." No checks were ever drawn on this account after it was made. Objections were filed in the district court to the sale, and after the hearing thereon the trial judge refused to confirm the sale, and on November 28, 1931, made an order setting aside the sales, and directing: "The referee is ordered to return to the bidders the deposits made on their bids." The Farmers & Merchants State Bank of McCook had been closed on October 24, 1931, and, therefore, the referee could not comply with the order of the district court.

Upon March 31, 1932, the referee filed a petition of intervention, setting out all of the facts in said matter, and alleging, among other things, "that said funds were deposited by this referee and received by said bank as a trust fund, then knowing that the same were deposited by said referee to be paid out upon the order of the district court."

On April 22, 1932, the receiver of said bank filed his answer, alleging that the deposit in question was a general, unsecured deposit, and that the trust relationship of the referee was not transferred to the bank.

Hearing on said matter was had upon May 14, 1932, and the case taken under advisement, and on June 27, 1932, the court found generally that the claim of the referee for $2,700 was not a regular or general bank deposit; that at the time of the deposit the referee was acting under the order of the district court in a partition proceeding, and that when the land was sold the down payments were placed in the said bank under the agreement with Dale S. Boyles, as set forth in the petition of intervention, and the court directed that the classification of the claim of the referee as a general, unsecured claim be set aside, and said claim be allowed as a trust fund, and ordered paid out of any funds available. Motion for new trial, setting out that the judgment was contrary to law and not sustained by the evidence, was duly filed, argued, and overruled.

In the able argument on behalf of the receiver, it is contended that the bank was not required to do anything but to honor the referee's checks, and the holding of the trial court is criticized, by saying that the proposition is simply this: That the referee, in substance, said to the banker, "If you will do me a great favor and sign my bond for $25,000, then I will permit you to do me another great favor, and hold the proceeds of the sale as trust funds;" and it is contended that this does not sound like a proposition that either a lawyer or a banker would enter into, and that the fact that the bank had knowledge

of the general purpose for which the funds were to be used does not change the deposit from a general deposit into a trust fund, citing, in support thereof, *Bank of Crab Orchard v. Myers,* 120 Neb. 84, and *Diehl v. Johnson,* 123 Neb. 699.

It may be contended that the original checks were not held by the bank, but the referee and the bank would have run a risk if the checks had not been put into circulation immediately. The total amount of deposits in the bank at the close of business on the date of the deposit of the two checks was $81,810.09, and on October 24, 1932, when the bank failed, the cash on hand and in correspondent banks was $26,243.77.

Trust funds placed in a bank for a particular purpose are sufficiently traced into the hands of the bank's receiver to entitle their owner to claim them if the fund delivered to the receiver exceeded the amount of the trust, although the money deposited may not have been kept intact. *Hudspeth v. Union Trust & Savings Bank,* 196 Ia. 706, 31 A. L. R. 466.

In the notes in A. L. R. following the case of *Hudspeth v. Union Trust & Savings Bank, supra,* it is stated as a general rule: "Where a deposit is made in a bank with the distinct understanding that it is to be held by the bank for the purpose of furthering a transaction between the depositor and a third person, or where it is made under such circumstances as give rise to a necessary implication that it is made for such a purpose, the deposit becomes impressed with a trust which entitles the depositor to a preference over the general creditors of the bank where it becomes insolvent while holding the deposit." See *Corporation Commission v. Trust Co.,* 194 N. Car. 125, 57 A. L. R. 382; *Blythe v. Kujawa,* 175 Minn. 88, 60 A. L. R. 330.

The law relating to partition sales provides, in section 20-2199, Comp. St. 1929: "If the sales are disapproved, the money paid and the securities given must be returned to the persons respectively entitled thereto." This clearly

implies that the money belongs to the bidder until the sale is confirmed, and that the bidder, or the referee in his behalf, had a right to follow that money wherever he could trace it, and when he found it in the possession of one who had knowledge of the facts, he could recover it.

When there is an agreement with bank officers that certain money is placed in a bank for the specific purpose of being held intact until the completion of a contemplated land sale by a referee in partition, and then to be turned over to the parties entitled thereto, the money so placed in the bank may be reclaimed as a trust fund, where the bank becomes insolvent while holding such money. *State v. Citizens Bank,* 124 Neb. 717; *Capital Nat. Bank v. Coldwater Nat. Bank,* 49 Neb. 786, 59 Am. St. Rep. 572, 172 U. S. 434; *State v. State Bank of Touhy,* 122 Neb. 582.

The judgment of the district court, holding that the deposit of money by the referee in partition was for a specific purpose known to the bank, thereby constituting the deposit a trust deposit, is hereby

AFFIRMED.