STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. BANK OF OTOE, E. H. LUIKART, RECEIVER, APPELLANT: BOWLES LIVE STOCK COMMISSION COMPANY ET AL., INTERVENERS, APPELLEES.

FILED NOVEMBER 16, 1933. No. 28603.

F. C. Radke, Barlow Nye, G. E. Price and Edwin Moran, for appellant.

Herbert S. Daniel, Jessen & Dierks and Fred A. Wright, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and SHEPHERD, District Judge.

GOOD, J.

The receiver of the insolvent Bank of Otoe has appealed from a judgment allowing to intervener, Bowles Live Stock Commission Company, a preferred claim against the bank.

The record discloses the following pertinent facts: E. W. Schutz desired to purchase from intervener a carload of cattle and arranged with one Hillman to borrow $1,200 to pay therefor. The president of the now insolvent bank was informed by Hillman and Schutz of this arrangement, and that Hillman would lend the amount to Schutz to pay for the cattle. Schutz purchased the cattle and tendered to intervener a check on the bank for the purchase price, $1,141.12. Before accepting the check intervener sent the following telegram to the bank: "Will you honor check for eleven hundred forty-one dollars twelve cents signed E. W. Schutz." On the same day the bank wired its answer to intervener as follows: "E. W. Schutz check will be paid." Hillman gave to Schutz a check on the Bank of Otoe, and Schutz deposited the

check in the bank for the express purpose of paying for the cattle, and the bank's president was so informed. The bank stamped the check paid, charged it to the account of Hillman and gave credit to Schutz. After the exchange of telegrams, intervener accepted Schutz's check on the Bank of Otoe for the purchase price of the cattle, and this check was transmitted for payment through the usual channels to the Bank of Otoe, which did not remit to intervener but retained the check until the bank was closed several days later. Hillman had on deposit in the bank sufficient funds to pay his check to Schutz.

It is stipulated that at the time the Hillman check was deposited there were funds in cash and bills of exchange in other banks, the property of the Bank of Otoe, amounting to about twice as much as the Hillman check. Schutz has assigned his interest in the claim to intervener.

It is intervener's contention that, when the Hillman check was stamped paid, and the amount thereof charged against Hillman's account in the bank, the check was paid, and the bank then received and held a trust fund for the payment of Schutz's check to intervener. The receiver, on the other hand, claims that the deposit to the credit of Schutz was a general and not a special deposit; that the assets of the bank were not augmented by the transaction; that it was a mere bookkeeping transfer of credits; that no trust fund arose, and that intervener, therefore, was not entitled, as the beneficiary of a trust, to have its claim preferred.

The receiver cites and relies upon *Milligan v. First State Bank of Barnard,* 55 S. Dak. 528; *Hornick, More & Porterfield v. Farmers & Merchants Bank,* 56 So. Dak. 18; *Beard v. Independent District of Pella City,* 88 Fed. 375; and *Empire State Surety Co. v. Carroll County,* 194 Fed. 593. It may be conceded that these authorities appear to sustain his contention. However, a different rule obtains in this jurisdiction and in many other states. We think that the rule, as it exists here and in most of the states, is that a deposit made for a specific purpose,

as for the payment of a particularly designated claim, partakes of the nature of a special deposit and is in a distinct class by itself. When a deposit is so made in a bank, it acts as the agent of the depositor, and if it fails to apply the deposit as directed, or should misapply it, the deposit may be recovered as a trust fund. 7 C. J. 631, 632; *Hudspeth v. Union Trust & Savings Bank,* 196 Ia. 706, 31 A. L. R. 466, and annotation to said case appearing at page 472 *et seq.*

The supreme court of North Carolina, in the case of *Corporation Commission v. Merchants Bank & Trust Co.,* reported in 57 A. L. R. 382 (194 N. Car. 125) held: "A deposit of a check given for the purchase price of real estate subject to a lien, under the agreement that the bank will immediately honor a check against the deposit sufficient to satisfy the lien, is impressed with a trust in the hands of a receiver of the bank to the extent of the lien." See, also, note to that case beginning on page 386 of 57 A. L. R.

In *Morton v. Woolery,* 48 N. Dak. 1132, it was held: "Where a person makes a deposit in a bank for the specific purpose of meeting certain checks to be thereafter issued, the bank on accepting the deposit becomes bound by the conditions imposed, and if the money so deposited is misapplied it can be recovered as a trust deposit."

The following cases announce the same rule: *Northwest Lumber Co. v. Scandinavian American Bank,* 130 Wash. 33, 39 A. L. R. 922; *Lusk Development & Improvement Co. v. Günther,* 32 Wyo. 294; *Blummer v. Scandinavian American State Bank,* 169 Minn. 89; *In re Warren's Bank,* 209 Wis. 121; *Winkler v. Veigel,* 176 Minn. 384; *Goodyear Tire & Rubber Co. v. Hanover State Bank,* 109 Kan. 772; *American Nat. Bank v. Miller,* 229 U. S. 517, 57 L. Ed. 1310.

In *Bartley v. State,* 53 Neb. 310, it was held: "The giving of credit as a deposit for the amount of a check, by the bank upon which it is drawn, is, in contemplation of law, a payment of the check in money, to the same

extent as though the currency had been paid over the counter on the check and immediately redeposited by the payee."

In *Scotts Bluff County v. First Nat. Bank,* 115 Neb. 273, it was held: "When a bank gives to one of its depositors credit in his pass-book for a check drawn by another of its depositors, having on its books ample funds to pay the check, such credit is equivalent to a payment of the check so deposited; and the depositor of the check is entitled to be considered a depositor of the cash represented by the check even though, without knowledge or connivance on his part, it was not entered on the books of the bank and the money was not further actually transferred."

In *Nutrena Feed Mills v. Superior Wholesale Grocery Co.,* 122 Neb. 728, it was held: "When a draft with a bill of lading attached is sent to a bank for collection and the drawee of the draft tenders to the bank its check on the collecting bank for the amount of the draft, the drawee being a depositor in the said bank with sufficient funds on deposit to pay the check, and the bank has sufficient cash on hand to pay the same, and the bank accepts and retains such check in payment of the draft, marks the draft 'Paid' and delivers it to the drawee, together with the bill of lading, the draft and the account it represents are paid. The delivery and acceptance of the check, under such circumstances, is equivalent to payment in cash."

In *State v. Citizens State Bank,* 124 Neb. 562, it was held: "Money paid to a bank for the sole purpose of paying a specific debt, and converted to its own use by the bank, *held* trust funds, payable in full from bank assets in hands of receiver."

In *State v. State Bank of Touhy,* 122 Neb. 582, it was held: "Converted proceeds of a check delivered to and received by a bank for the sole purpose of paying a specific debt of the payee *held* trust funds payable in full from bank assets in the hands of the receiver, and not

deposits." See, also, *State v. State Bank of Wahoo,* 42 Neb. 896; *Capital Nat. Bank v. Coldwater Nat. Bank,* 49 Neb. 786; *State v. Farmers State Bank, ante* p. 427, decided at the present term of court.

Under the facts disclosed by the record and in view of the authorities above quoted, we are impelled to hold that, when the Bank of Otoe accepted the Hillman check, stamped it paid, and charged it to his account, it was then paid as effectually as if the cash had been handed to Mr. Schutz; that, when Schutz deposited the Hillman check for the specific purpose of having the proceeds thereof used to pay for the carload of cattle, which purpose was made known to the bank and the deposit was accepted on that condition, the bank then held that fund as the agent of Schutz, and, on its failure to pay the Schutz check to intervener, Schutz, or his assignee, is entitled to have the claim treated as a trust fund and allowed preference accordingly.

It follows that the judgment of the district court is right, and it is

AFFIRMED.