STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. AMERICAN STATE BANK OF SPRINGFIELD, APPELLANT: REVA GRELL, INTERVENER, APPELLEE.

FILED JANUARY 26, 1934. No. 28718.

*F. C. Radke, Barlow Nye* and *Dwyer & Dwyer,* for appellant.

*E. S. Nickerson, contra.*

Heard before GOSS, C. J., ROSE and PAINE, JJ., and CARTER and REDICK, District Judges.

REDICK, District Judge.

The American State Bank of Springfield, Nebraska, is in the hands of receiver for liquidation and Reva Grell, by Exilda Grell, her next friend, filed a petition of intervention in the proceedings seeking to have the sum of $489.64 declared a trust fund payable in preference to the claims of general creditors. The receiver classified the claim as a preferred claim but declined to allow it as a trust fund payable in full. Upon appeal to the district court the classification of the receiver was set aside and the claim established as a trust fund payable in full before the claims of other creditors, and the receiver appeals.

The facts necessary to an understanding of the question presented are not in dispute and are substantially as follows: On April 2, 1926, in a divorce action then pending

in the district court for Sarpy county, Nebraska, wherein Exilda Grell was plaintiff and Fred Grell, Jr., was defendant, the defendant was directed by the court to pay to E. N. Christianson, who was by the court appointed trustee thereof, the sum of $1,700 for the support of Reva Grell, minor child of the parties. A copy of the order is given in full:

"It is therefore further ordered, adjudged and decreed, that the defendant, Fred Grell, Jr., pay to E. N. Christianson, who is by this court named trustee, who is required to give bond in the sum of $2,000 with surety to be approved by clerk of this court and make report to court once each year, the sum of $1,700 in cash, which is computed as the present worth of the allowance provided in the former decree, which is herein vacated, which said payment to said trustee by the defendant is in lieu of the provisions of said decree as to allowance, herein revised and vacated. That said money in the hands of the trustee shall be a trust fund for the support of Reva Grell, minor child of the parties, and the trustee shall pay out of said fund, with accumulated interest, the sum of $120 on April 1st and October 1st of each year, beginning with the month of April, 1926, to Exilda Grell, mother of said minor, for the support of said minor child.

"That said fund shall be kept on deposit in the American State Bank of Springfield, Nebraska, at the current rate of interest protected by the state guaranty fund, until further order of this court, and be evidenced by time certificates of deposit renewal April and October."

E. N. Christianson, appointed trustee by the court, was also the cashier of the bank, and therefore occupied a dual capacity with reference to the fund in question. In receiving the fund from Fred Grell, Jr., he acted as trustee under the order of the court, and in receiving the fund for deposit in the bank of which he was cashier he acted as agent of the bank. In this situation the bank must be held cognizant of all the facts within the knowledge of the trustee, with reference to the transaction in ques-

tion. *State v. American State Bank,* 108 Neb. 98. After payment of the first instalment of $120 to Exilda Grell, the trustee deposited in the bank the sum of $1,580, taking a time certificate of deposit therefor maturing at the due date of the next instalment in October. The fund was not kept separate by the bank but was mingled with its general assets, and a sum in excess of the amount claimed by intervener, $489.64, came into the hands of the receiver, and there remained. As each instalment became due new certificates were issued maturing at the date of the next following instalment, which was paid by check of the trustee until the closing of the bank, leaving the amount claimed still unpaid.

It is the claim of the intervener that the fund in question was deposited in the bank for a specific purpose, to wit, to be paid out in semiannual instalments to the intervener; not that it was a special deposit but a specific deposit, the distinction being that in the former case the fund is to be held intact and returned in specie, while in the latter the fund may be intermingled with the general assets of the bank, but is to be applied only for a certain purpose. In either case the fund may constitute a trust entitled to preferential payment over general creditors.

Whether or not a deposit is general or specific depends upon the terms of the contract at the time. *In re Warren's Bank,* 209 Wis. 121.

Counsel for receiver cites the case of *Reichert v. American State Savings Bank,* 264 Mich. 366, to the effect that money deposited in bank to be used for a specific purpose did not make it a trust fund, "but it would become trust fund only if deposited with understanding that it should be set apart for particular purpose, and not mingled with other money of bank." (249 N. W. 876.) In that case the contract was that all funds deposited in excess of $3,250 were to be transmitted to the bank's correspondent in Chicago in the ordinary course of business. While the holding in that case was undoubtedly

correct upon its special facts, we think the statement of the principle is too broad, as it leaves out of view entirely the distinction between a special and a specific deposit. To apply the law as there announced would exclude from protection a deposit made in a bank for the purpose of completing a transaction in real estate upon the delivery of deed, abstract, etc., in the ordinary terms of such transactions, unless the money was placed in a special fund and kept intact. Unless a special contract to that effect was made with the bank it could not be said that it was within the contemplation of the parties that the particular currency should be turned over to the grantor, but rather that the fund should be covered into the general assets of the bank upon the understanding that the bank would pay an equal amount upon presentation of the deed. To so hold would be contrary to practically all the decisions relating to deposits for a specific purpose. Counsel also cites *Ottawa Banking & Trust Co. v. Crookston State Bank,* 185 Minn. 22, that "guardian's deposit of ward's money in the guardian's name as such, in absence of special circumstances, constitutes 'general deposit' as respects preference." (239 N. W. 666.) The qualification, "in absence of special circumstances," renders this case inapplicable. Also to the point that a deposit represented by a time certificate of deposit is a general deposit, and not a trust, *State v. South Fork State Bank,* 112 Neb. 623; *Farrens v. Farmers State Bank,* 101 Neb. 285; *State v. Farmers State Bank,* 111 Neb. 117. An examination of these cases, however, will disclose that in none of them were there any special circumstances having a tendency to establish the existence of a trust.

Counsel for receiver cites a number of cases to the proposition that money deposited in the bank as a general deposit by a guardian or trustee, known to be such by the bank, cannot be considered and paid as a preferential claim over other depositors; the mere knowledge of the bank of the character of the fund will not raise a trust. This proposition may be conceded, but it begs the

question whether or not in the particular case the fund was a general deposit. He also cites a number of cases to the point that a deposit represented by a time certificate of deposit is a general deposit and not a trust, but in none of those cases was the question of trust involved. He also says that, "In the absence of a special agreement by which the bank becomes a trustee or circumstances sufficient to create a trust, a deposit will be deemed a general deposit"—citing *Pethybridge v. First State Bank*, 75 Mont. 173; *Gray v. Elliott*, 36 Wyo. 361; *Lamro State Bank v. Farmers State Bank*, 34 S. Dak. 417; *State v. First State Bank*, 123 Neb. 643. But the question here is whether or not the circumstances surrounding the deposit were of such a character as to create a trust. In none of the cases cited were any special circumstances shown having that effect. He also cites *Commercial Nat. Bank v. Smith*, 244 N. W. (S. Dak.) 521, in which it was held that a general deposit "possesses no trust quality and is mingled with the other funds of the bank, and if insolvency ensues, depositor shares *pro rata* with other creditors." It was, however, also held in that case: "As respects priority, when special deposit is made for specific purpose for third person's benefit, trust in favor of third person is created; title remaining in depositor." And in the opinion it was said, quoting from *City of Sturgis v. Meade County Bank*, 38 S. Dak. 317: "As a rule, when money is deposited in a bank, title to such money passes to the bank. The bank becomes the debtor of the depositor to the extent of the deposit, and, to that extent, the depositor becomes the creditor of the bank. * * * Such deposit then constitutes a part of the assets of the bank, and, in case of insolvency, belongs to the creditors of the bank in proportion to the amount of their respective claims. Exceptions to this rule are: First, where money or other thing is deposited with the understanding that that particular money or thing is to be returned to the depositor; second, where the money or thing deposited is to be used for a specifically designated purpose; and,

third, where the deposit itself was wrongful or unlawful." In that case a general deposit was made in bank by railroad contractor for the purpose of meeting checks drawn by him for the payment of labor and materials in carrying out his contract, and the court held that no trust was created in favor of the holders of claims for labor and materials furnished. It seems to us that case presented merely the ordinary situation of the deposit of funds in the conduct of general business and presents no feature indicating the establishment of a trust.

In the case at bar we have the following special circumstances bearing upon the nature of the deposit: (1) The fund was established for the benefit of Exilda Grell for the support of the minor; (2) the court appointed Christianson as trustee of the fund; (3) the court ordered the fund deposited in the bank to be paid out in accordance with the order of the court; (4) the fund was accepted by the bank with full knowledge as to the specific purpose to which it was to be devoted. We think under these circumstances the deposit cannot be said to be a general one, but for a specific purpose, for the benefit of a third person, and that by the acceptance of the deposit the bank became the trustee of that third person, and that the claim should have preference over the general creditors of the bank.

It was held in *Officer v. Officer,* 120 Ia. 389: "A specific deposit exists when money or other property is given to a bank for some specific and particular purpose, as a note for collection, money to pay a particular note, or property for some specific purpose." In order to create a specific deposit, it is not necessary that the fund be kept intact as in the case of a special deposit, but it is sufficient if the deposit is made with the agreement or understanding with the bank that a sum equal to the deposit shall be forthcoming for the special purpose intended.

The case of *State v. Farmers & Merchants State Bank,* 125 Neb. 437, was in many respects like the case at bar.

There, one Cheney was appointed referee in partition for the sale of real estate, and received deposits of purchasers on their bids. He was required to give bond as referee and arranged with the cashier of the bank to sign the bond upon the agreement that Cheney would deposit the money accruing from the sale in the bank. The money was so deposited in the name of "L. H. Cheney, Referee Harsch Estate." Later on the sales were set aside and the referee ordered to return to the bidders the deposits made on their bids. In the meantime the bank had closed its doors and the referee was unable to comply with the order of court. This court held that the deposit in question constituted a trust fund entitled to preference over the claims of general creditors. But the court treated the fund as a special deposit, saying: "When there is an agreement with bank officers that certain money is placed in a bank for the specific purpose of being held intact until the completion of a contemplated land sale by a referee in partition, and then to be turned over to the parties entitled thereto, the money so placed in the bank may be reclaimed as a trust fund, where the bank becomes insolvent while holding such money." The case does not control the present one, as it is not contended that the fund in question here was a special fund to be held intact, the intention being that it was a specific fund agreed to be used for a specific purpose, which puts the case in another class. It was, however, held in that case that it was not necessary for the claimant to trace the identical funds into the receiver's hand, and the fact that the original fund may not have been kept intact did not prevent it being affected with a trust. It is true that in that case the general doctrine was announced that, where "certain money is placed in a bank for the specific purpose of being held intact until the completion of a contemplated land sale by a referee in partition, and then to be turned over to the parties entitled thereto, the money so placed in the bank may be reclaimed as a trust fund, where the bank becomes insolvent while holding

such money" (citing cases); but the statement of the contract in that case did not include a provision that the money should be held intact as a special deposit, and therefore the statement above quoted of the general rule as to special deposits does not detract from the previous holding of the court in that case that "Trust funds placed in a bank for a particular purpose are sufficiently traced into the hands of the bank's receiver to entitle their owner to claim them if the fund delivered to the receiver exceeded the amount of the trust, although the money deposited may not have been kept intact"—citing *Hudspeth v. Union Trust & Savings Bank*, 196 Ia. 706. Furthermore, Paine, J., in the opinion of this court, approved the following general statement of the rule, quoting from 31 A. L. R. 466, note: "Where a deposit is made in a bank with the distinct understanding that it is to be held by the bank for the purpose of furthering a transaction between the depositor and a third person, or where it is made under such circumstances as to give rise to a necessary implication that it is made for such a purpose, the deposit becomes impressed with a trust which entitles the depositor to a preference over the general creditors of the bank where it becomes insolvent while holding the deposit." See *Corporation Commission v. Trust Co.*, 194 N. Car. 125; *Blythe v. Kujawa*, 175 Minn. 88.

It would seem that there is greater reason for holding the deposit in the present case to be a special deposit than in the case cited, in view of the fact that it was to remain until further order of the court; however, we prefer to treat it as a deposit for a specific purpose.

The conclusion we have reached finds support in the following cases cited by appellee: *State v. Farmers & Merchants Bank of Kennard*, 118 Neb. 495; *Morton v. Woolery*, 48 N. Dak. 1132; *Village of Monticello v. Citizens State Bank*, 180 Minn. 418; *Reichert v. Midland County Savings Bank*, 254 Mich. 551; *In re Warren's Bank*, 209 Wis. 121, in which case it was said: "It seems to be well settled that a deposit made in a bank for a

specific purpose, and for that alone, partakes of the nature of a special deposit, and does not establish the relation of debtor and creditor between the depositor and the bank, but establishes a fiduciary relation which is sometimes declared to be that of principal and agent, while some courts hold that a trust relation is created (citing cases). Such a deposit is called a specific as distinguished from a special deposit."

The receiver objects that in the cases just cited the bank was to distribute the fund. If this objection has any force it is answered by the requirement of the court order that certificates of deposit be issued by the bank payable April 1 and October 1 of each year; that the bank was so directed, rather than to pay direct to Exilda Grell, creates no valid ground for distinguishing those cases.

We think the present case falls clearly within the principle announced by this court since the argument: "Where bank accepted check with knowledge that it was deposited for specific purpose of using proceeds to pay for cattle, deposit held trust fund to which payee of check given for purchase price of cattle was entitled to preference on bank's insolvency." *State v. Bank of Otoe,* 125 Neb. 530 (quoting from 251 N. W. 111).

Other matters referred to in the briefs do not seem to require discussion in view of our holding on the main point.

We find no error in the record and the decree of the district court is

AFFIRMED.

CARTER, District Judge, dissenting.

The facts in this case are correctly set forth in the majority opinion and I will refer to them only in so far as it is necessary so to do in explaining the reasons for my dissent.

It appears that one E. N. Christianson was appointed trustee of the fund involved herein by the district court

for Sarpy county. In the order appointing the trustee, the trustee, and not the bank, was required to make quarterly payments for the benefit of the *cestui que trust;* the fund was to bear interest, be protected by the depositors' guaranty fund, and be carried in the form of certificates of deposit which were to be made payable on the same dates that the trustee was to make his payments under the terms of the trusteeship. It seems to me that the above conditions contained in the order creating the trust are conclusive of the fact that the fund was to be placed in the bank as a general deposit; otherwise, there could have been no reason for their being in the court's order. It is undisputed that a trustee can lawfully make a general deposit of trust funds in this state. I do not concur with the view of the court as expressed in the majority opinion to the effect that, the fund having been accepted by the bank with full knowledge as to the specific purpose to which it was to be devoted, it is therefore a trust fund.

If the bank had full knowledge because of the fact that Christianson was also cashier of the bank, it certainly knew when it accepted the fund that it was doing so under the directions of the court as contained in the order set out in the majority opinion, and which provides conditions that clearly make it a general deposit. Mere knowledge of the nature and purpose of the trust fund is not sufficient to make the bank a trustee. *Diehl v. Johnson,* 123 Neb. 699. In the case of *Commercial Nat. Bank v. Smith,* 244 N. W. (S. Dak.) 521, it was held that a trust fund did not exist, for the reason that there was no allegation or proof of an agreement by the bank that the deposit was to be held other than as a general deposit. In the case of *In re Warren's Bank,* 209 Wis. 121, cited in the majority opinion, it was held: "A deposit in a bank is general or special, depending upon the contract of the parties at the time the deposit is made. It is presumed to be general in the absence of an agreement to the contrary." In *Reichert v. American State Savings Bank,* 264 Mich. 366, it is held: "That money deposited

in bank was to be used for specific purpose did not make it trust fund, but it would become trust fund only if deposited with understanding that it should be set apart for particular purpose, and not mingled with other money of bank." (249 N. W. 876.)

To hold that knowledge of all the circumstances in this particular case makes the bank a trustee of the fund when that knowledge of itself discloses that the order of the court creating the fund provides for a general deposit of the funds appears illogical as I view it.

The fact that the order creating the trust provided that the certificates of deposit were to fall due on certain dates does not indicate that the fund was to be distributed by the bank. This provision was for the convenience of the trustee, Christianson, whose duty it was to distribute the fund on the same dates the certificates of deposit became due. The court order expressly says that the trustee shall make the payments from the fund.

The creation of a trust fund is contractual in its nature, and for a court to hold that a trust fund could be created without an agreement or understanding, express or implied, gives the trust fund rule an interpretation, in my judgment, that is not supported by reason or by the authorities. Knowledge that a fund is deposited for a specific purpose should be accompanied by an agreement or understanding with the bank that it is accepted as such.

The rule seems to be almost universal that a special deposit is always the result of a special agreement, express or implied, between the bank and the depositor, whereby the bank becomes the disbursing agent to carry out the special purpose of the depositor. In the case at bar, if the depositor, Christianson, carried out his instructions given him by the court, and I believe he did to the letter, the deposit could be nothing other than a general deposit. In the face of these facts, mere knowledge by the cashier of the bank could not change the debtor and creditor relationship thus established.

In the case at bar, there is no evidence of any agreement or understanding with the bank. The deposit simply was a deposit of trust funds by the trustee thereof. It was not made in violation of the terms of the trust, but complied strictly therewith. The terms of the trust having expressly provided for a general deposit and the bank not having entered into any different arrangement or agreement, it is my opinion that the fund is a general deposit, and not a trust fund.

While I respect the opinions of the other members of the court sitting on this case and know that they have given it their serious and earnest consideration, yet I feel that the trust fund theory is being extended by the majority opinion to such an extent that it is unfair to the general depositors of failed banks. In my judgment the rule announced is not supported by the authorities and should not be adopted as the law of this state. For the reasons herein set out, I am obliged to dissent.