STATE EX REL. ROHN SHOE MANUFACTURING COMPANY and another, Respondents, vs. INDUSTRIAL COMMISSION, Appellant.

*December 7, 1934—January 8, 1935.*

For the appellant there was a brief by the *Attorney General, Joseph G. Hirschberg,* deputy attorney general, and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.*

For the respondents there was a brief by *Olin & Butler,* and oral argument by *R. M. Rieser,* all of Madison.

FRITZ, J. The appeal herein is from an order overruling defendant's demurrer to a complaint upon which plaintiffs, Rohn Shoe Manufacturing Company and Fidelity Investment Association (hereinafter called the Association), seek declaratory relief, defining the powers of the plaintiffs in respect to the proposed creation of an additional trust deposit contemplated under certain contracts between them for the creation of a trust fund for the payment of unemployment compensation under ch. 108, Stats., by the Rohn Shoe Manu-

facturing Company; and directing the Industrial Commission that the plans are legal, and that no ground exists for its disapproval because of lack of power of the Investment Association to enter into such contracts.

The Rohn Shoe Manufacturing Company is engaged in business in this state, and it and its employees are within and subject to the provisions of ch. 108, Stats. 1933. The association is a corporation organized and existing under the laws of West Virginia, and is subject to its laws relating to investment associations. It is licensed to do business in Wisconsin as an investment company, under the provisions of ch. 216 and secs. 215.38 to 215.47, Stats. 1929, as amended; and pursuant to those statutes, has on deposit with the state treasurer of Wisconsin $500,000 of securities for the sole benefit and security of all of the association's contract holders within this state, as required by sec. 215.38, Stats.

Sec. 108.16, Stats., provides for the creation of an "Unemployment Reserve Fund" to carry out the provisions of ch. 108, Stats., and secs. 108.16, 108.17, and 108.18, Stats., require contributions to be made by employers to that fund. Sec. 108.15 (2), Stats., provides that the commission shall exempt, from certain provisions of ch. 108, including sec. 108.16, Stats., relating to compulsory contributions by employers to that "Reserve Fund," any employer or group of employers submitting a plan for unemployment benefits which the commission finds will provide the required benefits and is as beneficial in all other respects, to all employees eligible for benefits, as the compulsory plan provided in the act. And sub. (4) of sec. 108.15, Stats., provides:

"As a condition of granting exemption, the commission may require the employer or group to furnish such security as the commission may deem sufficient to assure payment of all promised benefits or wages, including the setting up of proper reserves. . . ."

The Rohn Shoe Manufacturing Company, desiring to qualify for the exemption provided for in sec. 108.15, Stats.,

submitted a plan in conjunction with the association, which contemplates the creation and maintenance of an unemployment reserve fund, to be financed by the employer currently depositing at least two per cent of its monthly pay-roll in a special checking account in a bank or trust company (having the Federal Deposit Insurance Corporation's guarantee), and the monthly investment of a portion of the fund so to be accumulated in certain income reserve contracts, to be entered into between an employer and the association, and to be issued to the employer by the association in accordance with its investment program, and also a special separate agreement, to be entered into between the employer and the association. Under that special separate agreement, the association's liability under the income reserve contracts, which it is to issue to the employer, is to be protected, and further secured by the requirement that,—in addition to the deposit of securities by the association with the state treasurer of West Virginia, as required by the laws of that state to be made for the benefit of the association's contract holders, and in addition to the deposit of securities, valued at $500,000, by the association with the state treasurer of Wisconsin for the benefit and security of all of the association's members in this state, as is required by sec. 215.38, Stats.,—

"The Association shall make a new and separate deposit in Wisconsin (hereinafter called 'additional trust deposit') of securities deposited under this agreement with a 'Depositary' from time to time designated by the Association and approved by the Commission."

In that connection, that special separate agreement provides that—

"No moneys credited to such contracts shall be commingled with the general or other funds of the Association, but all such moneys shall be used to acquire securities to be held in the additional trust deposit;" and that "the Association hereby declares that the entire additional trust deposit shall be held in trust by such Depositary, exclusively for the purposes set forth in this agreement and in such plans, until

all obligations of the Association under such contract shall have been fully performed and discharged;"

and it was arranged that the Marshall & Ilsley Bank at Milwaukee was to be the depositary under the contract. In the income reserve contracts there are provisions and schedules in respect to the surrender of those contracts for cash and for cash loans, either of which would provide money for the payment of unemployment benefits when needed.

The Industrial Commission, on August 14, 1934, approved of the plan submitted by plaintiff, excepting that the commission then neither approved nor disapproved of the "investment portions of the plan," but declared that "it will approve such portions of the plan as and when the Wisconsin supreme court holds that the investment portions are legal and that a valid trust has been created by such plan which will be beyond reach of general creditors of the" association. The attorney general, on behalf of the Industrial Commission, challenges the validity of the investment portion of the plan, and also the validity of the trust insofar as the securities deposited in the "additional trust deposit" are intended to be beyond the reach of general creditors of the association, on three grounds.

The first of those grounds is that the soliciting and receiving of money on deposit by the association, in the course of the proposed transactions, would be illegal banking in violation of secs. 224.02 and 224.03, Stats. The latter section prohibits doing a banking business without having been chartered as a national or state bank, mutual savings bank, or trust company bank. The association has no such charter, and is not authorized to do a banking business. But the association is duly licensed and authorized to engage in business in Wisconsin as a so-called "investment company" under secs. 216.01, 216.02 and 215.38 to 215.47, Stats., and it contends that the proposed transactions involved herein are within the scope of the authorized business of an investment

company, and are not to be considered the doing of a banking business, as that term is defined in sec. 224.02, Stats. The scope of the authorized operations of an investment company, licensed solely under secs. 216.01, 216.02 and 215.38 to 215.47, Stats., is indicated by the following provision in sec. 216.01, Stats., insofar as it is therein provided that no corporation—

"doing business as a so-called investment . . . company, for the licensing, control and management of which there is no law now in force in this state, and which . . . shall solicit payments to be made to . . . itself either in a lump sum, or periodically, or on the instalment plan, issuing therefor so-called bonds, shares, coupons, certificates of membership or other evidences of obligation or agreement, . . . to return to the holder or owners thereof money or anything of value at some future date,"

shall do any business in Wisconsin, unless it shall have complied with the requirements of ch. 215, Stats., relating to foreign building and loan associations authorized to do business in Wisconsin. Manifestly, in view of that provision, a corporation, which "shall solicit payments to be made to . . . itself either in a lump sum, or periodically, or on the instalment plan, issuing therefor so-called bonds . . . or other evidences of obligation or agreement, . . . to return to the holder or owners thereof money or anything of value," is to be licensed in Wisconsin under the statutes relating to building and loan associations, and is not to be licensed under the statutes relating to the doing of a banking business. Consequently, the mere soliciting and receiving of payments by an investment association, licensed,—as is the plaintiff association,—under sec. 216.01 and ch. 215, Stats., and its issuance therefor of written evidence of obligation or agreement,—such as the income reserve contracts involved in this action,—to return to the owners thereof money or anything of value, are to be considered to be within the legitimate scope of the authorized business of such an investment com-

pany, as recognized by sec. 216.01, Stats., and are not to be deemed the doing of prohibited banking business. In that connection, it should be also noted that in sec. 224.02, Stats., which defines banking (that constitutes a violation of sec. 224.03, Stats.) as—

"the soliciting, receiving, or accepting of money or its equivalent on deposit as a regular business by any person, . . . or corporation, shall be deemed to be doing a banking business, whether such deposit is made subject to check, or is evidenced by a certificate of deposit, a pass book, a note, a receipt, or other writing," there is the express proviso that "nothing herein shall apply to or include money left with an agent, pending investment in real estate or securities for or on account of his principal."

By that proviso the legislature has also expressly recognized that the leaving of money with another, and his retention thereof, pending the investment thereof by him in securities for or on account of his principal, is not to be deemed the doing of a banking business.

It follows that, as under the proposed income reserve contract and the accompanying special separate contract between the employer and the association, the monthly payments, which were to be made by the employer, were not to be commingled with other funds of the association, but were to be invested by the association,—acting within the authorized scope of the business of a so-called investment company,—in approved securities, which were to be held by a designated "Depositary," exclusively for purposes that were expressed to be principally for the benefit of the employer and its employees, until the association's obligations under said contracts were fully discharged, the transaction in question would not constitute illegal banking, but would be the doing of an authorized investment business within the contemplation of secs. 216.01, 216.02, and 215.38 to 215.47, Stats. The fact that there were also provisions in the income re-

serve contracts which permitted, as an incident to that type of investment, the surrender of those contracts for cash, or the obtaining of loans thereon, on the basis of scheduled cash surrender or loan values, does not change the basic purpose and character of the monthly payments to be made by the employer as an investment, to mere bank deposits, and does not constitute the receipt and temporary retention thereof by the association in a special fund, pending investment in securities, the doing of a banking business. To hold otherwise would be as unwarranted as it would be to consider the receipt of premiums paid to an insurer on a life insurance policy, the doing of a banking business, because the policy, in connection with providing for insurance, has also provisions for cash loan or surrender payments to the insured.

The second ground on which the attorney general questions the proposed plan is that the association cannot lawfully pledge its general assets for the particular security of only the income reserve contracts, which are to be held by employer for the purpose of providing the security required for the payment of the unemployment compensation, under ch. 108, Stats. In support of that ground it is contended that, as the association offers to receive moneys from other investors, and invest them for the benefit of its contract holders in general, and itself, the nature of its business at least so closely resembles banking transactions that there is applicable the rule, recognized in some jurisdictions (see notes: 45 L. R. A. (N. S.) 950; 51 A. L. R. 313; 65 A. L. R. 1412), that a bank may not pledge any of its assets as security for the deposits of some of its general depositors, to the prejudice of its other depositors. To begin with, that rule is not applicable here because, as stated above, the proposed transactions under consideration do not constitute the doing of a banking business. On the other hand, as the securities which are to be deposited with the designated "Depositary,"

as the "additional trust deposit," are to be purchased with money which the association is to receive monthly from the Rohn Shoe Manufacturing Company under the express provision in the special separate agreement that the association shall not commingle such money with its general or other funds, but that it shall be used solely to acquire the securities which are to be held by the depositary in that additional trust deposit, the money so to be received, and the securities to be purchased therewith, are not to become part of the general assets of the association. Instead, that money and those securities are to be held, as is provided in that special agreement, "exclusively for the purposes set forth in this agreement and in such plans, until all obligations of the association under such contracts shall have been fully performed and discharged." In view of those circumstances, those special beneficiaries are primarily entitled to that special fund and the deposited securities purchased therewith, and the claims of the other contract holders or creditors of the association are but secondary, under the rule that a contract under which money or property is deposited determines whether the deposit is general or special, and, where the special purpose clearly appears, the fund is applicable first to the discharge of the obligations to the special beneficiary for whom the fund was deposited, and the claims of the general creditors are secondary. *In re Warren's Bank,* 209 Wis. 121, 244 N. W. 594; *Lambert v. State Bank of Patch Grove,* 179 Wis. 359, 191 N. W. 555; *Emigh v. Earling,* 134 Wis. 565, 115 N. W. 128; *Woodhouse v. Crandall,* 197 Ill. 104, 64 N. E. 292, 58 L. R. A. 385; *People v. Farmers State & Savings Bank,* 338 Ill. 134, 170 N. E. 236; *Stockard v. Stockard's Adm'r,* 7 Humph. (Tenn.) 303, 46 Am. Dec. 79.

The third ground on which the attorney general questions the proposed plan is that, as the association proposes to handle the unemployment reserve fund, which is to be estab-

lished by the employer under the Unemployment Compensation Act, as a trustee for the benefit of its employees, and proposes to set itself up as a trustee for the purposes stated in the act, the association is, insofar as the investments or securities involved under these plans are concerned, undertaking a trust in excess of its corporate authority; that, if the money paid by the employer is to constitute a special fund to be held by the association until it is invested, the latter will be engaging in a trust business by retaining that money in a separate fund until it is invested and the securities are placed in the additional trust deposit; and that, in either event, the association is not authorized to enter upon a general trust business even though it were conceded that a corporation may become a trustee for purposes within the general scope of its authority and powers. In that connection, it is contended that the power to engage in the business of acting trustee can neither be inferred from the association's charter, nor from the laws of West Virginia, which regulate it; but that, on the contrary, insofar as corporations are concerned, the Laws of West Virginia of 1931 (ch. 31, art. IV, secs. 1, 7, 18) confer the power to engage in the business of acting as a trustee solely upon corporations organized as either banking institutions or trust companies. However that may be, those contentions are immaterial because, under the proposed plan and contracts, the association would not be acting as a trustee in respect to the unemployment insurance funds for either the employer or its employees. True, in investing those special funds as accumulated by the employer's monthly deposits in a special checking account at some bank or trust company, the association would be acting in a fiduciary relation. However, in doing that, it would not be engaging in business as a trustee. It would be merely acting within the authorized scope and in furtherance of its business as an investment company, under the powers conferred

upon it by its charter, the Laws of West Virginia, and the license issued to it under chs. 215 and 216, Stats., to engage in that business in this state. Although, under the proposed plan, the income reserve contracts are to be considered by the Industrial Commission as proper for investments of the unemployment funds, the association is not to become a trustee for the investor, upon the employer's investing in such a contract. The legal relation, in that respect, between the employer and its employees, on the one part, and the association, on the other part, is no different than the relation between the beneficiaries of a trust fund and the obligor on any other bond or other security in which the fund might be invested. On the other hand, although the additional trust deposit, which is provided for in the special separate agreement in connection with the income reserve contract, is intended to fully secure the performance of the latter contract, the designated depositary, and not the association, is to be the trustee of the trust. That trust is to afford the protection which is required by the Industrial Commission to insure repayment of the income reserve contract in which the funds are to be invested under the plan in order, as is authorized by sec. 108.15 (4), Stats., "to assure fulfillment of his [the employer's] promises to his employees." The securities which are to be deposited with the Marshall & Ilsley Bank as a "Depositary" are not to be security primarily for the employer's unemployment compensation fund, but are primarily security for the performance of the association's income reserve contracts. It is directly for that purpose that the securities, which are to be placed in trust with the Marshall & Ilsley Bank as the depositary, are at all times to be available and in the control of the depositary as trustee, so as to insure the performance of the obligation which the association assumes under its contract with the employer. Under those circumstances, there is no more basis for holding that the association is to be a trustee of the unemployment compen-

sation fund than there would be for holding that the maker of an ordinary note and mortgage, in which unemployment compensation funds might be invested under some other approved plan, was such a trustee.

It follows that the order under review must be affirmed. However, in that connection, it must be noted that the questions which are raised and considered on this appeal do not involve the merits or safety of the proposed plan and contracts from a financial standpoint, and we are not passing on those matters.

*By the Court.*—Order affirmed.