IN RE STATE BANK OF ELKHORN.
CHARITY HANGER ET AL., APPELLEES, V. E. H. LUIKART, RECEIVER, APPELLANT.

FILED JULY 19, 1935. No. 29351.

*F. C. Radke, Barlow Nye* and *Sam E. Klaver*, for appellant.

*Robins & Yost, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY and CARTER, JJ., and MESSMORE and REDICK, District Judges.

CARTER, J.

This is an appeal by E. H. Luikart, superintendent of banks, from a decree of the district court for Douglas county, in which interveners were awarded preference of payment to them on a claim of $4,000 for which a trust was impressed against the assets of the State Bank of Elkhorn, an insolvent state bank.

The record shows that Henry Winterburn and Eliza Winterburn deeded 80 acres of land to each of their children at the time their youngest son became 21 years of age, each subject to a charge of $160 a year to be paid to the grantors for the term of their natural lives. One child of the Winterburns, a daughter, died in 1913, leav-

ing two children, Charity Hanger and Harry Hanger. The 80 acres of land that was to have been the deceased daughter's share was sold for $14,000 and the amount placed in the care of John E. Winterburn and John N. Wyatt as joint trustees, who by the trust agreement were directed to deposit the funds in the State Bank of Elkhorn upon interest bearing certificates of deposit for the benefit of the Hanger children. The interest was used for the maintenance and support of Charity and Harry Hanger during their minority.

On March 26, 1931, Harry Hanger, the younger of the two children, became of age. On that date each of the two children received $5,000 from the trustees of the fund. In addition thereto, under the terms of another trust agreement of that date, each deposited $2,000 in the State Bank of Elkhorn with the understanding that the interest thereon was to be for the benefit of Eliza Winterburn and Henry Winterburn, or the survivor of them. It was clearly the intention of the parties to set aside a sufficient amount of money to provide an annual income for the named beneficiaries equal to that paid by the other children of Eliza and Henry Winterburn.

The provisions of the trust agreement relative to the issues of this case are as follows:

"First. The said sum of $4,000 shall be deposited in the State Bank of Elkhorn upon two separate certificates of deposit in the sum of $2,000 each, said certificates of deposit to be registered in the name of the State Bank of Elkhorn, trustee, and said certificates of deposit to bear interest at the rates provided for by the rules and by-laws of said bank.

"Second. The interest on said deposits is to be paid by the State Bank of Elkhorn to the said Eliza Winterburn and Henry Winterburn or the survivor of them so long as the said Henry Winterburn and Eliza Winterburn or the survivor of them shall live.

"Third. The said trust shall terminate upon the death of the survivor of the said Henry Winterburn and Eliza

Winterburn and upon the termination of said trust the sum of $2,000 each is to be paid by the State Bank of Elkhorn as trustee to Charity Frances Hanger and Harry Lunsford Hanger."

The sole question is whether, under the facts and circumstances herein set out, the fund of $4,000 is a trust fund or a general deposit.

There is no contention made that the agreement was not freely signed by Charity and Harry Hanger. No charge of fraud or misrepresentation is made. The question resolves itself into one of determining the nature of the fund viewed in the light of the trust agreement and the surrounding circumstances.

The contention is made by the appellees that the deposit was one made for a specific purpose and that the same is therefore a trust fund. In the case of *Officer v. Officer,* 120 Ia. 389, "special" and "specific" deposits were defined as follows: "A special deposit is created where the money is left for safe-keeping and return of the identical thing to the depositor. And a specific deposit exists when money or property is given to a bank for some specific and particular purpose, as a note for collection, money to pay a particular note, or property for some specific purpose." The deposit made in the case at bar was not a special one. The bank did not receive it on the promise to keep the identical money and to return it to the trustors when the purposes of the trust agreement had been fulfilled. It was not specific for the bank had the right to mix the funds with other money received by it. The bank merely obligated itself to return the fund in kind to the trustors at the death of the beneficiaries.

In *Doty v. Ghingher,* 166 Md. 426, two partners entered into an agreement to deposit $5,000 each upon 4 per cent. interest account, they to receive the interest accruing therefrom, the said deposit to be subject to the control of the trust company with which it was deposited pending the liquidation of the affairs of the said firm and until all accounts, claims and charges held by said trust company

against the partners had been fully satisfied. Whenever all of the claims were satisfied, the fund was to be returned to the partners with whatever interest that had accrued. The trust company failed and the partners claimed a trust fund. The court said: "There is here not only nothing in the agreement expressly providing that the funds shall be kept separately, but the fact that the bank was to pay interest on the deposit indicates that it was intended it should have the use of the money for its own purposes. * * * The only designated purpose of the deposit was to protect the bank. It became the debtor of the depositor for the amount deposited, subject to mutual offsets. The account was virtually assigned as collateral. The depositor is entitled to an offset, but is not a preferred creditor as to any balance."

In Restatement, Trusts, Tentative Draft No. 1, p. 44, sec. 15, comment h, it is said: "If money is deposited in a bank for a special purpose, the bank is a trustee or bailee of the money if, but only if, it is the understanding of the parties that the money deposited is not to be used by the bank for its own purposes."

A deposit in a bank is general or special, depending upon the contract of the parties at the time the deposit is made. It is presumed to be a general deposit in the absence of an agreement to the contrary. In the case at bar, the moneys involved were placed in the form of certificates of deposit, bearing interest at 4 per cent. The trustees, in so placing the fund, acted as directed in the trust agreement which provided that the certificates of deposit should bear interest at the rate provided by the by-laws of the bank. The purpose of the agreement was to create a fund that would raise the sum of $160 a year for Henry and Eliza Winterburn, so long as either should live. Clearly, the very purpose of the trust agreement was to make the amount deposited earn the $160 a year that Charity and Harry Hanger were morally obligated to pay. It is true that the bank was directed to pay the interest to Henry and Eliza Winterburn as it became due, and as to the in-

terest the bank may have been a trustee of a specific deposit, but there is no claim for interest in this action. The claim is for the principal which was still in the bank when it closed its doors. The trust agreement provided for the return of the fund by the bank to the Hanger children when the trust agreement was terminated by the deaths of Henry and Eliza Winterburn. Clearly, the fund was not to be kept separate from the other funds of the bank. In order to earn the interest contemplated, the fund of necessity must be used and loaned by the bank. If the bank was required to hold the money intact and at the same time pay interest upon it, the amount of the interest paid would be a net loss to the bank. While the payment of interest on a deposit is not conclusive proof that a deposit is general, it is strong evidence of that fact. In the case at bar, the specific direction of the trust agreement was that the bank should pay interest to the beneficiary. This certainly presupposes the use of the fund by the bank as its own in order to earn the interest and the trustors must have so intended. The bank would of necessity have to convert the money to its own use for the purpose of earning and paying the interest provided for. Under these circumstances, with the bank thus authorized to treat the money as its own, the fund, strictly speaking, would not belong to the trustors and would not become trust property.

In *Bair v. Snyder County State Bank,* 314 Pa. St. 85, the court said: "But the bank through its cashier retained the certificates for the particular reason, as he states, that decedent wanted interest. The bank agreed to pay it and that was the only way, the cashier states, it could be accomplished. Interest in a fixed amount was to be paid by the bank to decedent. This is a circumstance that must not be lost sight of in determining the intention of the parties, for interest is ordinarily the charge demanded for the use of money. *Pittsburgh Nat. Bank v. McMurray,* 98 Pa. St. 538. Its imposition implies a debtor-creditor and not a trustee-beneficiary relation."

Appellees rely upon the case of *State v. American State Bank*, 126 Neb. 34. In our judgment there are distinguishing features in the facts of that case from those in the case at bar. In addition thereto, that case has been severely criticized by this court in *State v. South Omaha State Bank*, ante, p. 43, in the following language by Good, J.: "We are of the opinion that the court went to the extreme limit in that case in sustaining the claim of the deposit as a trust fund. While the cashier was, no doubt, liable as a trustee, we are now inclined to the view that it is very doubtful whether the court did not exceed the limits of propriety in holding that the bank was also a trustee." We, at least, are not willing to follow this case under the facts and circumstances disclosed by the record in the case at bar.

The contention is made that the fact that the certificates of deposit were made payable to the "State Bank of Elkhorn Trustee for Charity Frances Hanger" and "State Bank of Elkhorn Trustee for Harry Lunsford Hanger" tends to prove that the deposit was a special or specific deposit. To this we cannot agree. In *Wasserman v. Broderick*, 250 N. Y. Supp. 84, the court said: "Nothing is shown which justifies a finding that a trust relationship was established which deprived the bank of the right to use the funds so deposited as it used its general deposits. * * * And the fact that a depositor, after his name, adds words descriptive of the capacity in which he holds the funds, such as executor, administrator, trustee, guardian, and the like, does not make the deposit a special deposit. * * * Moreover, the presumption is that a deposit is general and not special. * * * And the burden of proof is upon the one who asserts that a deposit is special. * * * Under the general rules above stated, I think the deposit here involved must be deemed to be a general and not a special deposit. The bank was entitled to use the fund as it used the funds of its general depositors, and the relation of debtor and creditor only existed between petitioner and the bank."

The contention is next made that, as the bank was the trustee of the fund and deposited it in its own bank, it is holding the fund for a specific purpose as trustee. The trust agreement designates the State Bank of Elkhorn as the depository of the fund. Even if the bank was the trustee of the fund, the contention of appellees is without merit. In the case of *Andrew v. Presbyterian Church*, 216 Ia. 1134, the facts were as follows: Mary M. Elliot died leaving a will containing a clause that gave $2,000 to the Helmer & Gortner State Bank as trustee for the use and benefit of the Presbyterian Church Society of Mechanicsville, Iowa, to be perpetually held by the bank on interest bearing "savings deposit," the interest to go to the trustees of the church. The fund was deposited on savings account in the said bank in an account designated as "Mary M. Elliot Trust Fund Presbyterian Church." The bank failed and the Presbyterian Church claimed a trust fund. The court said: "We are constrained to hold that the deposit of the fund in question, under the terms of the Mary M. Elliot will, was a general deposit and not special or specific. And that claimants have no greater rights in the cash or assets of the insolvent bank than other general depositors. The fund was rightfully deposited, and was to be held by the bank in its savings account 'perpetually.' The only specific direction or obligation arising was that the bank should pay interest thereon. There was no violation of any specific or special agreement. It is our judgment that the order of the trial court, allowing the claim as a deposit claim only, was right, and an affirmance follows."

We therefore conclude that the funds in question in the case at bar constitute a general fund and not a special or specific fund. The trial court therefore erred in allowing the claims of interveners as trust funds payable in full from the assets of the State Bank of Elkhorn. The judgment of the trial court is therefore reversed and the petition of intervention dismissed.

REVERSED AND DISMISSED.