BENDER, Receiver, Appellant, v. NEILLSVILLE BANK, Respondent.

*April 4—May 3, 1960.*

For the appellant there was a brief and oral argument by *Robert P. Bender* of Wisconsin Rapids, *in pro. per.*

For the respondent there was a brief by *Brazeau, Brazeau & Cole* of Wisconsin Rapids, and oral argument by *John A. Cole* and *Theo. W. Brazeau.*

MARTIN, C. J.   The first question presented is as to the nature of the bank account here involved. The trial court held it was a special account for a special purpose, and we agree.

The account opened by the construction company was denominated a "Trust for St. Mary's Convent Project." The receiver testified that all checks which he wrote, as receiver, on the Neillsville bank account (with the exception of the last two, in amounts of $2,770.61 and $233.76, as recited above) were in payment of wages earned and materials supplied in connection with the convent project. The $5,000 which he deposited in the account on December 16, 1954, was received from St. Mary's Congregation to apply on the cost of the convent project.

Thus, appellant himself treated the account as a fund for a specific purpose, the convent project. He asserts that the account was used by the construction company for other than convent-project expenses, but we find no evidence in the record to support such a statement.   Apparently the testimony referred to is that of a bookkeeper whose wages were paid from the account on November 1 and 10, 1954, but her testimony is vague and inconclusive except that the convent project was the main part of the construction company's work at that time.

In holding that the account was a special account for a special purpose the trial court relied on the principle expressed in *In re Warren's Bank* (1932), 209 Wis. 121, 124, 244 N. W. 594, as follows:

"It seems to be well settled that a deposit made in a bank for a specific purpose, and for that alone, partakes of the nature of a special deposit and does not establish the relation of debtor and creditor between the depositor and the bank, but establishes a fiduciary relation which is sometimes declared to be that of principal and agent, while some courts hold that a trust relation is created."

The account itself bore the designation "Trust for St. Mary's Convent Project," and, as pointed out in the *Warren's Bank Case, supra,* page 125, a special account for a special purpose is in the nature of a trust account, and "the money thus deposited must be applied for the purposes for which it was deposited." It is undisputed that everyone having anything to do with the account treated it as such. The construction company, the appellant, as receiver, and the bonding company deposited all moneys received from the project in this account. It is likewise undisputed that no improper expenditures were made from the account; no funds were paid out of it except in payment of obligations arising out of the project.

The second question is whether the bonding company, under its contract for bond with the construction company, was entitled to the funds in the Neillsville bank account when it took over the convent project on December 21, 1954.

When applying for the bond the construction company entered into an agreement with the bonding company, paragraph VI of which provides in part:

". . . undersigned [Lakeview Construction Company] does hereby assign, transfer, and convey to said company all the deferred payments or retained percentages, and any and all moneys and properties that may be due and payable at the time of claim or default, or that may become due and payable to undersigned thereafter on account of, arising out of, or in connection with said contract, . . . This assignment shall be in full force and effect, as of the date hereof; should undersigned fail, refuse, or be unable to complete the work in accordance with the terms of the contract covered by the bond or bonds herein applied for; or in event of any default on the part of undersigned under said contract or said bond or bonds; . . . or in the event of the failure of undersigned to perform, or comply with, any of the covenants and obligations of this agreement."

Paragraph VII thereof provides:

"In the event of any breach by the undersigned of the bond or bonds herein applied for or the contract or contracts, or in the event of undersigned's affairs being taken over by a . . . receiver or trustee, the company may, in its discretion, make or consent to arrangements for completion of the work covered by said contract, at the expense of undersigned, and shall have an immediate right of action against undersigned or undersigned's estate for the recovery of any loss or liability so incurred, whether the same shall have been paid or not."

In *Builders Lumber & Supply Co. v. Chicago Bonding & Surety Co.* (1918), 167 Wis. 167 (syllabus 3), 166 N. W. 320, it is said:

"A contractor's bond given by a surety company for a money consideration has all the essential features of an insurance contract and is not to be construed according to the rules applicable to ordinary accommodation sureties."

The assignment made by Lakeview under paragraph VI of its agreement with the bonding company was to be in effect "at the time of claim or default," and on December 3, 1954, Lakeview was "in default." It had admitted its insolvency and inability to pay its debts—obviously an admission that it could not complete its contracts. The contingency contemplated by paragraph VI had occurred. The convent-project account was clearly property assigned to the bonding company under that provision.

The opening language of paragraph VI of the agreement provides that, "The company shall as surety on said bond or bonds be subrogated to all rights, privileges, and properties of undersigned in said contract, . . ." At the moment the construction company admitted its insolvency and its affairs were taken over by a receiver, the bonding company became subrogated to all the rights of the construction company in and to the funds referred to in that provision of the agreement.

The effect of the *ex parte* order of December 16, 1954, is immaterial. The record shows that the bonding company took possession of the project bank account under the bond, and the receiver recognized its right as surety to take over the project and arrange for its completion. Appellant himself testified:

"As to the funds, which if the construction was continued, would become due and owing, it was my opinion that I had no right to that property as receiver of the Lakeview Construction Company under the order of the court, of December 21, 1954; because Mr. Schmidt had said that the Lakeview Construction and myself, when I took it over, were in default. I took him at his word . . ."

Thereafter appellant turned over to the bonding company's agent, Mr. Schmidt, all the records relating to the convent project and he drew no more checks on the account until July of 1958 (the project was completed in June of 1955), and made no objection to Schmidt's use of the account. Appellant transmitted to Schmidt, for payment, all bills arising out of the project which came into his hands and co-operated with the bonding company in every way. He cannot now claim that the bank improperly honored checks drawn by the bonding company on the account in question.

*By the Court.*—Judgment affirmed.