Theodore COLLIER, Respondent-Plaintiff,

v.

CONSOLIDATED CAB CO., INC., Defendant,

and

J. D. Williams, Appellant-Defendant,

City of Kansas City, Missouri, Appellant-Intervenor,

and

Traders National Bank, Respondent-Garnishee.

No. KCD 30465.

Missouri Court of Appeals, Western District.

Dec. 3, 1979.

Aaron A. Wilson, City Atty., Nordahl E. Holte, Asst. City Atty., Kansas City, for appellant-intervenor, City of Kans. City, Mo.

Allan R. Browne, Ennis, Browne & Jensen, Kansas City, for appellant-defendant Williams.

Dean A. Hodapp, Blumer & Nally, Kansas City, for respondent-plaintiff Collier.

Myron S. Silverman and Dennis E. Egan, Gage & Tucker, Kansas City, for respondent-garnishee Traders Nat'l Bank.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

MANFORD, Judge.

This action originated as a suit for damages for fraud. Entry of default judgment was made against respondents Consolidated Cab Company, Inc. and J. D. Williams. Garnishment in aid of execution was instituted by plaintiff. Garnishee filed a petition in interpleader. The City of Kansas City, Missouri was granted leave to intervene. The parties agreed, by stipulation of record, that the cause could be submitted upon the pleadings and documents of record without additional evidence, and that the garnishee was entitled to its out-of-pocket expenses in the sum of $2,500.00. The trial court entered its memorandum and order that funds in the possession of the garnishee were subject to execution by way of garnishment and that those funds were to be paid over to the registry of the court, and further that the Court Administrator be ordered to pay over to the plaintiff-respondent those monies less the sum of $2,500.00 allowed to garnishee for its expenses. This order of the trial court was dated August 11, 1978. On August 28, 1978, the trial court entered another order acknowledging garnishee's payment of the funds over to the registry of the court and that as authorized, the garnishee had deducted its expenses in the sum of $2,500.00. The order then discharged the garnishee as a party to this action.

This appeal followed and relates only to the trial court order of August 11, 1978. The order of the trial court, for purposes of this appeal, was a final judgment. The matter was tried before the court upon pleadings and documents. The review by this court, therefore, is made pursuant to Rule 73.01 and under the rule in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976).

Disposition of this appeal necessitates re-iteration of the facts and the procedural transactions as instituted by the parties. For purposes of clarity, the parties are referred to under their trial court party designation.

The plaintiff was a former employee of defendants. The defendants deducted certain monies from plaintiff's wages as contribution toward the purchase and maintenance of health insurance coverage to the benefit of the plaintiff. Defendants permitted the group insurance coverage to lapse, but continued to deduct contributions from plaintiff's wages.

Plaintiff became ill and required medical and hospital care. It was determined he was afforded no health insurance because such coverage had lapsed due to the action of defendants. Plaintiff sued defendants for fraud and secured a default judgment against the defendants in the sum of $37,546.00. The judgment was for $12,546.00 in actual damages and $25,000.00 in punitive damages. The date of this judgment was January 31, 1974.

Separate defendant J. D. Williams was the sole owner of Consolidated Cab Company and the majority stockholder in Consolidated Cab Company, Inc. It should be noted that plaintiff's judgment was against individual defendant J. D. Williams and Consolidated Cab Company, Inc., not Consolidated Cab Company. While it has no direct bearing on the disposition of this appeal, it is worthy to point out that Consolidated Cab Company, Inc. was declared a bankrupt ten days before the original filing of this action.

Following the entry of the original judgment for plaintiff under date of January 31, 1974, plaintiff caused garnishment in aid of execution on said judgment to issue to garnishee. Interrogatories were filed by plaintiff upon the garnishee. The garnishee filed its answers to the interrogatories and the answers pertinent to this appeal and entered of record are as follows:

"1. At the time you were summoned as Garnishee, had you in your possession, custody or charge, or under your control, or have you since that time had possession or charge of or under your control, any goods, chattels, property, money, credits or effects belonging to the defendant Consolidated Cab Company, Inc.? If so, state what they were and are, in what amounts, and how they came into your possession, custody, control or charge.

*ANSWER:* No.

2. At the time you were summoned as Garnishee, had you in your possession, custody or charge, or under your control, or have you since that time had possession or charge of or under your control, any goods, chattels, property, money, credits or effects belonging to the defendant J. B. [sic] Williams? If so, state what they were and are, in what amounts, and how they came into your possession, custody, control or charge.

*ANSWER:* No.

3. At said time, were you or have you since become, or are you now in any wise indebted to the defendant, Consolidated Cab Company, Inc.? If so, state in what amount, in what manner the debt accrued, whether the debt is now due, and if not yet due, when it will become due.

*ANSWER:* No. See further answers attached hereto.

4. At said time, were you or have you since become, or are you now in any wise indebted to the defendant, J. B. [sic] Williams? If so, state in what amount, in what manner the debt accrued, whether the debt is now due, and if not yet due, when it will become due.

*ANSWER:* No. See further answers attached hereto.

5. If any such debt as described in the preceding Interrogatories are evidenced by

an instrument in writing, describe the same and state the location of the instrument, or attach a copy of the instrument to your answer. Also, state whether to your knowledge such instrument was in the possession of or under the control of the defendants or their agents when you were summoned as garnishee, and whether it has since come into the possession of or under the control of either of them.

*ANSWER:* The agreement between Kansas City, Missouri, a municipal corporation, and J. D. Williams, doing business as Consolidated Cab Company, Inc., agreed to by Traders National Bank as designated depository is attached hereto.

\* \* \* \* \* \*

9. For further answer to said interrogatories, Traders National Bank, garnishee, pursuant to the directions of Kansas City, Missouri, a municipal corporation, was designated as a depository under the terms of the Taxicab Ordinances of Kansas City, Missouri, of the sum of $20,000.00 made by J. D. Williams, doing business as Consolidated Cab Company, Inc., on October 7–12, 1976.

The depositor as a sole proprietor d/b/a Consolidated Cab Company, is not a corporation and is a different legal entity from Consolidated Cab Company, Inc., against which plaintiff Theodore Collier obtained a default judgment on January 31, 1974.

\* \* \* \* \* \*

For further answer, Traders National Bank, garnishee states that the fund held by it in trust as depository is payable only by direction of Kansas City, Missouri, under the Taxicab Ordinances which limit payments which may be made solely to 'damages on account of injury, death or property damages resulting from the ownership, maintenance, use or operation of any taxicab arising by reason of the carelessness or negligence of the operator or driver of such taxicab'.

Garnishee states that the judgment obtained by fraud is not of the kind or character to which the ordinance is applicable and the City of Kansas City, Missouri will not authorize or divert payment from said fund for plaintiff's judgment as shown by letter from Nordahl Holte, Esq., Assistant City Attorney, Attachment 2, hereto."

As can be readily ascertained, the garnishee, in answer to interrogatory no. 5, refers to an agreement between defendant J. D. Williams, Consolidated Cab Company, Inc. and intervenor, City of Kansas City, Missouri. This agreement is part of the record herein as Exhibits A and B and represents the original savings account ledger card between defendant J. D. Williams, Consolidated Cab Co., Inc. and garnishee (Exhibit A) and a second savings account ledger card between the same parties (Exhibit B). Exhibit A was superceded by Exhibit B under date of May 11, 1977. Both Exhibit A and Exhibit B were typical savings account ledger cards. Both such cards carried on their face, regarding the designation as to the type of account, the following:

"TYPE OF ACCOUNT

☒ Individual

☐ Joint

☐ Other"

The cards carried in typewritten form the following language on the face thereof:

"This account represents self insurance for the Consolidated Cab Co. and may not be disposed of in any way without written agreement from the Commissioner of Revenue of K. C., Mo., J. D. Williams-Consolidated Cab Co." (Exhibit A)

"This account represents self insurance for Consolidated Cab Co. and may not be disposed of in any way without the written agreement from the Administrator of Taxicabs and Livery Vehicles." (Exhibit B)

Both cards, on the face thereof, carried typewritten language that the interest on said account was to be paid to defendant J. D. Williams.

On Exhibit A, which carried the account opening date of October 7, 1976, the sum of $18,500.00 was shown as the opening balance. On Exhibit B, no balance was shown.

Plaintiff filed a denial to the garnishee's answers to interrogatories.

Under the answer to interrogatory no. 9, it should be noted the garnishee answered that it was holding the sum of $20,000.00 under the terms of the Taxicab Ordinances of the intervenor, the City of Kansas City, Missouri.

Garnishee next filed a reply to plaintiff's denial of garnishee's answers, admitting to the deposit of $20,000.00 by defendant J. D. Williams and the fact that said account was earning interest, but denied that the deposit was subject to garnishment by plaintiff. Garnishee then filed a petition for interpleader.

Intervenor, the City of Kansas City, Missouri, then filed its petition to intervene as a defendant in the case, asserting that said deposit was not subject to plaintiff's action in garnishment because said deposit was made pursuant to § 33.62 and other sections of the Revised Ordinances of Kansas City, Missouri.

Following the above, the parties entered into a brief stipulation that judgment could be entered from the pleadings and exhibits attached to those pleadings.

At this juncture, it is necessary to point out the relative positions of the parties as those positions relate to the funds on deposit.

Plaintiff maintained he was a judgment creditor and the fund was subject to general execution. Garnishee maintained the funds on deposit were not reachable by general execution because they were deposited under an agreement between the defendants and the intervenor-city. Intervenor-city maintained the same posture as the garnishee.

It should be pointed out that prior to filing its answers to interrogatories, the garnishee had secured a letter from an assistant city attorney for intervenor, directing that the garnishee not pay the monies over to plaintiff as those monies were on deposit pursuant to § 33.62 and § 33.67 of the Revised Ordinances of Kansas City, Missouri. Thus, with the filing of the answers to interrogatories by garnishee, the denial of those answers by plaintiff, a reply

to that denial by garnishee, the petition to interplead and the petition to intervene, the issues between the parties became joined.

Since the garnishee and the intervenor postulated their original positions upon the requisites of the city ordinances, those pertinent ordinances are listed below.

"ARTICLE IV. BONDS, INSURANCE, CASH or COLLATERAL DEPOSITS
Sec. 33.62. Required.

It shall be unlawful to operate a taxicab, as defined in this code, or permit the same to be operated, nor shall any permit be issued hereunder, until and unless the applicant for such permit, in addition to all other requirements set forth in this code, shall file and maintain with the administrator, for each taxicab to be operated, either a bond, policy of liability insurance, deposit of cash or collateral in lieu of bond or insurance, or a deposit of cash or collateral and a policy of liability insurance.

Sec. 33.63. Requirements of liability insurance policy—Amount, conditions.

The policy or certificate of liability insurance required by section 33.62 shall be issued by a company authorized and licensed to do an insurance business in the state, for each taxicab for which a permit is sought, acceptable to and approved by the administrator and approved as to form by the city attorney, indemnifying the applicant in the sum of at least ten thousand dollars ($10,000.00) for injury to, or death of, one person, by reason of the carelessness or negligence of the driver or operator of such taxicab, and twenty thousand dollars ($20,000.00) for injury to, or death of, more than one person, resulting from a single accident, by reason of the carelessness or negligence of the driver or operator of such taxicab, and five thousand dollars ($5,000.00) for damage to property, including baggage or other property, of a passenger carried in or on said taxicab, resulting from any single accident, by reason of the carelessness or negligence of the driver or operator of such taxicab. The said policy shall further contain a clause obligating the

insurance company to give twenty (20) days' written notice to the administrator before cancellation of the said policy, and the permit shall expire upon the lapse of said policy or certificate, or termination of the same by cancellation, unless within said twenty (20) days, in case of notice of cancellation by the insurance company, the holder of a permit shall furnish another policy acceptable to the administrator or comply with the provisions of sections 33.65 and 33.66 or sections 33.67 through 33.71 inclusive.

Sec. 33.64 Same—Endorsement.

There shall be attached to all liability insurance policies, issued pursuant to the requirements of this code, the following endorsement, to-wit:

In consideration of the premium stated in the policy to which this endorsement is attached, the company hereby waives a description of the motor vehicles to be insured hereunder and agrees to pay any final judgment for personal injury, including death resulting therefrom, or damage to property, caused by any and all motor vehicles operated by the assured pursuant to the taxicab permit issued by Kansas City, Missouri, within the limits set forth in the schedule shown hereon, and further agrees that upon its failure to pay any such final judgment, the judgment creditor may maintain an action in any court of competent jurisdiction to compel such payment. Nothing contained in the policy or any endorsement thereon, nor the violation of any of the provisions thereof by the assured, shall relieve the company from liability hereunder or from the payment of such judgment; attached to and forming a part of policy number_____issued by_____to _____.

Sec. 33.65. Requirements of bond.

The bond required by section 33.62 shall be with a solvent and responsible surety company authorized to do business under the laws of the state, as surety thereon, acceptable to the administrator and approved as to form by the city attorney, conditioned that the applicant will pay all final judgments recovered against such applicant for injury to, or death of, one person, by reason of the carelessness or negligence of the driver or operator of such taxicab, up to the sum of ten thousand dollars ($10,000.00) and twenty thousand dollars ($20,000.00) for injury to, or death of, more than one person, resulting from a single accident, by reason of the carelessness or negligence of the driver or operator of such taxicab, and five thousand dollars ($5,000.00) for damages to property, including baggage or other property of a passenger carried in or on any such taxicab, resulting from any single accident by reason of the carelessness or negligence of the driver or operator of such taxicab; provided that an applicant seeking a permit to operate not more than fifteen (15) taxicabs may file a bond of forty thousand dollars ($40,000.00); for more than fifteen (15) and not more than twenty-five (25) taxicabs a bond of fifty thousand dollars ($50,000.00); for more than twenty-five (25) and not more than fifty (50) taxicabs a bond of sixty thousand dollars ($60,000.00); for more than fifty (50) and not more than one hundred (100) taxicabs a bond of eighty thousand dollars ($80,000.00); for more than one hundred (100) and not more than one hundred fifty (150) taxicabs a bond of one hundred thousand dollars ($100,000.00); for more than one hundred fifty (150) and not more than two hundred (200) taxicabs, a bond of one hundred twenty thousand dollars ($120,000.00); and for more than two hundred (200) taxicabs, a bond of one hundred fifty thousand dollars ($150,000.00). Said bond shall contain a further provision obligating the surety company to give twenty (20) days' written notice before a cancellation by the surety of the said bond to the administrator, and the permit to operate a taxicab shall expire on the lapse of said bond or termination of the same by cancellation unless within said twenty (20) days, in case of notice of cancellation by a surety, an applicant shall furnish another bond in conformity herewith, acceptable to the administrator and approved as to form by

the city attorney or comply with the provisions of sections 33.63 and 33.64 or sections 33.67 and 33.71.

Sec. 33.66. Continuing liability under bond or insurance; insufficient bond, policy.

The bond or policy of insurance required by section 33.62 shall contain a provision for continuing liability thereunder to the full amount thereof, notwithstanding any recovery thereon. If, at any time, in the judgment of the administrator, such bond or policy is deemed insufficient for any cause, the administrator may require the owner of such taxicab to replace such bond or policy with another, to be approved by the administrator.

Sec. 33.67. Cash, collateral or combination of cash, collateral and insurance in lieu of bond or insurance—Deposit authorized.

(a) In lieu of the surety bond or policy or certificate of insurance required by section 33.62 the applicant may enter into an agreement with the city, to be prepared to the satisfaction and approval of the city attorney, that such applicant shall pay all final judgments recovered against either the applicant or the driver of such taxicab, or both, within the limits set forth in this section. Such limits shall be construed, however, to limit the liability of such applicant, or the driver of a taxicab, only for the purposes of such agreement. Such agreement shall be secured by the deposit by the applicant of cash, or obligations of the United States Government, which shall be in an amount equal to fifty percent (50%) of the amount of the bond required by section 33.65; provided that if by reason of the diminishing of or lack of financial responsibility of the applicant, or the number of unpaid final judgments obtained against such applicant (or for any other cause) the administrator shall deem such deposit of cash or collateral to be insufficient, he may require the owner of such taxicab to increase such deposit by such amount as the administrator, within his reasonable discretion, shall deem sufficient to protect the public interest. The decision of the administrator with reference to the deposit of additional case or collateral shall be final as to and conclusive upon such applicant.

(b) The applicant may satisfy the requirements of section 33.62 and of this section by entering into an agreement with the city, as hereinabove provided, and by depositing to secure such agreement cash or obligations of the United States Government, which shall be in an amount equal to twenty-five percent (25%) of the amount of the bond required by section 33.65; and by delivering to the city a policy or certificate of liability insurance in accordance with the provisions of sections 33.63 and 33.64 hereof, indemnifying the applicant in the sum of at least five thousand dollars ($5,000.00) for injury to or death of one person by reason of the carelessness or negligence of the driver or operator of such taxicab, and ten thousand dollars ($10,000.00) for injury to or death of more than one person, resulting from a single accident by reason of the carelessness or negligence of the driver or operator of such taxicab, and three thousand dollars ($3,000.00) for damage to property, including baggage or other property of a passenger carried in or on said taxicab resulting from any single accident by reason of the carelessness or negligence of the driver or operator of such taxicab. The said policy shall in all other respects conform to all the requirements of sections 33.63 and 33.64 hereof.

Sec. 33.68. Same—Agreement to be filed with administrator and depository.

The cash or government obligations provided for in section 33.67 shall be deposited by the applicant or holder of a permit in such bank in the city as may be designated by the administrator as depository to receive such deposits, as collateral security for the faithful performance of the aforesaid agreement. The applicant, or holder of a permit, shall file with the administrator and said bank has his written authorization, executed in duplicate, wherein he shall expressly agree that if any court, or the clerk thereof, shall certi-

fy to the administrator and to said depository that such applicant or holder of a permit has failed to satisfy within thirty (30) days any final judgment of said court upon which execution has been lawfully issued, for damages on account of bodily injury, death or property damage resulting from the ownership, maintenance, use or operation of any taxicab of such applicant or holder of a permit, such cash or government obligations so deposited shall, to the extent of ten thousand dollars ($10,000.00) for injury or death of one person and twenty thousand dollars ($20,000.00) for the injury or death of more than one person, and five thousand dollars ($5,000.00) property damage arising out of any one accident, by reason of the carelessness or negligence of the operator or driver of such taxicab, be applied by said depository upon the written order of the administrator, to the satisfaction of said judgment; and agreeing that for that purpose any government obligations so deposited may be sold and converted into cash by said depository at its market price, and that any cash excess from the proceeds of such sale shall remain with said depository as collateral security aforesaid; and agreeing to pay any charge made by the depository for the handling of such deposit. In the event said applicant or holder of a permit shall fail to perform the aforesaid agreement with the city, referred to in section 33.67, said deposit of cash or government obligations shall be used and applied by the administrator and said depository to the satisfaction of said judgment, in accordance with the terms and subject to the limitations of said written authorization.

Sec. 33.69. Same—Payment of interest.

So long as a depository has received no written notice of default by an applicant or holder of a permit in the faithful performance of his agreement with the city referred to in section 33.68, such applicant or holder of a permit shall be entitled to receive, and said depository shall pay to him, if, as, and when collected by it, all interest from time to time accruing upon any government obligations deposited as herein provided.

Sec. 33.70. Cancellation of bond or insurance on substitution of deposit.

If any applicant or holder of a permit, having deposited a bond under section 33.65 or a policy or certificate of liability insurance under sections 33.63 and 33.64, shall elect to substitute in lieu thereof the agreement and make the deposit of cash or government obligations as provided by section 33.68, he shall be entitled to effect a cancellation of such bond, policy or certificate of liability insurance as of the date of such substitution and deposit.

Sec. 33.71. Return of cash or collateral to depositors.

In case an applicant or holder of a permit after making a deposit of cash or government obligations, as provided in section 33.62 and section 33.67, shall discontinue the operation of taxicabs and retire from the taxicab business in the city, or in case he shall, with the consent of the administrator, substitute in lieu of said agreement a bond in accordance with section 33.65 or a policy or certificate of liability insurance in accordance with sections 33.63 and 33.64, an appraisal shall thereupon be made by the administrator and said applicant or holder of permit, of all outstanding and unpaid claims pending against such person, and a sufficient amount of such cash or government obligations so deposited shall be obtained by the depository as, in the reasonable discretion of the administrator, shall be reasonably sufficient to guarantee payment of such claims. The balance of such deposit shall thereupon be returned to the person making such deposit by said depository, upon the order of the administrator, and thereafter the balance of such fund shall, from time to time as claims are reduced, be returned by said depository to the person making such deposit on the order of the administrator, in proportion to the amount that it shall be shown to said administrator that such claims have been paid, or satisfied, or have been reduced, dropped or abandoned. In case of dispute over such appraisal between

the person making such deposit and the administrator, the dispute shall be informally submitted for arbitration to the then assigned judge of the circuit court of the county, in the city, and the decision of such judge thereon shall be final and binding upon all parties."

Also, by record, was a document captioned, "Inter-Departmental Communication" from L. B. Bennett, Commissioner of Revenue (for intervenor-city) to the intervenor's file. The date of this communication was 10–12–76 and was marked as Exhibit A–1. It reads as follows:

"Today, October 12, J. C. Williams deposited $20,000.00 in cash in an account in the name of J. D. Williams d/b/a Consolidated Cab Company in the Traders National Bank, Kansas City, Missouri.

The above deposited funds represents an amount necessary for self-insurance for the Consolidated Cab Company. As long as the $20,000.00 remains intact, Mr. Williams may keep 15 cabs operating as the Consolidated Cab Company. Should he be required to pay out some of these funds he must replenish that amount or cease doing business.

Mr. Williams has been made aware of this fact and understands it and stated that he will comply with the requirement. It is understood that the interest earned by the $20,000.00 deposited in the Traders National Bank savings account is to be given to Mr. Williams each year but that he may not withdraw any of these funds for any reason without permission and cooperation with the Commissioner of Revenue of Kansas City, Missouri."

Faced with the foregoing evidence, the trial court entered its memorandum and order concluding in summary that § 33.67, 33.68 and 33.69 of the Revised Ordinances of Kansas City, Missouri are the applicable ordinances towards a resolution of the issue. The court further concluded that neither the intervenor nor the separate defendant J. D. Williams complied with the ordinances. It was further concluded by the trial court that as claimed by the interdepartmental communication (Exhibit A–1),

separate defendant J. D. Williams did not deposit the sum of $20,000.00 with the garnishee. The trial court also concluded that separate defendant J. D. Williams did not enter into an agreement with the intervenor-city as required by § 33.67 of the Revised Ordinances of Kansas City, Missouri. The court went on to conclude that from the evidence, it could not be found that separate defendant J. D. Williams deposited the funds, which were in dispute, with the garnishee in compliance with the city ordinances and hence, the intervenor-city acquired no control whatsoever over the funds.

From that order, this appeal followed. With respect to the parties, their respective roles and posture on the issues remain the same except for the garnishee, who on this appeal, is a respondent.

Appellants contend the trial court erred because the order was not supported by any substantial evidence. They also contend that the trial court erred in not finding there was a trust fund, pursuant to the Revised Ordinances of Kansas City, Missouri, limiting payment from the fund only upon the directions from the Administrator of Taxicabs and Livery Vehicles and only for the limited use in paying damages arising from and out of the use and operation of defendants' taxicabs.

As is shown, separate defendant, J. D. Williams, and intervenor-city, City of Kansas City, Missouri, have joined on this appeal.

Respondents' filed separate briefs. The plaintiff-respondent argued that the trial court's findings, in all respects, were correct. The garnishee-respondent on appeal, in addition to arguing there is no jurisdiction on appeal over the garnishee by virtue of the second order of the trial court striking garnishee as a party to the suit, (there was no appeal from this second order), proceeded to argue support for the trial court order in that a trust fund did not arise in conformity with the city ordinances.

■ Review of the matter is made by this court and the judgment of the trial

court must be affirmed unless it is found that there is no substantial evidence to support the judgment, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron, supra.*

Review of all pleadings and documents of record leads this court to conclude the judgment of the trial court is against the weight of the evidence and must be reversed.

 The trial court concluded erroneously that no agreement had been entered into as between defendant J. D. Williams and intervenor-city for lack of compliance with the ordinances of the city. Under date of October 12, 1976, just such an agreement was acknowledged by the interdepartmental memorandum or interdepartmental communication of the city. It is correct, as the trial court pointed out, that this memorandum or communication alluded to the deposit of $20,000, when in fact the evidence reveals only a deposit of $18,500. This only serves to point out that defendant Williams had not, as of that date, fully complied with the requisite deposit of $20,000 as it relates to the total sum in dollars. On the other hand, it is substantial evidence to establish an agreement between intervenor-city and J. D. Williams for purposes of creating a deposit for a specific purpose. Upon the point of the sum of money, however, the garnishee's answers to interrogatories revealed a sum total of $20,000.

At the same time, the depository (garnishee herein) had placed upon the face of the account cards restrictive language limiting disbursement of any of the monies in the account without the written agreement of the proper authority from and on behalf of the intervenor-city.

The evidence of record shows that while perhaps no written agreement as referred to in the ordinance had been reached, and no written approval had been authorized by the authority designate of the intervenor-city, the parties, defendant J. D. Williams and intervenor-city, had, in fact, entered into an agreement. This agreement was that defendant Williams deposit funds with an authorized bank for the purpose of mak-

ing restitution for damages caused by the operation of taxicabs upon the streets of Kansas City. There was, as the evidence shows, a substantial compliance with the ordinance and the only proper inference which can be drawn from the evidence is that the deposit made by Williams was for a special purpose. The special purpose in the instant case was for purposes of reimbursement for damages caused by or produced by and as a result of the negligent operation of taxicabs in and throughout the municipal confines of the intervenor-city. It follows that because it was a deposit for a specific purpose, the account was not subject to general execution, and it was error for the trial court to have so concluded.

There appears to be no Missouri decision directly on point as it relates to the particular facts of this case. This necessitates a brief reference to the nature of deposits and the applicability or nonapplicability of garnishment in aid of execution relative to such accounts.

Bank deposits fall into three general categories or selections. The first of these, the most common, is the general deposit. Such deposit has been defined as, ". . . one to the general credit of the depositor, wherein title to the money passes to the bank and it becomes the debtor of the depositor with the obligation to repay such money in current funds on the depositor's order or demand." 9 C.J.S. Banks and Banking § 273 (1938) at 556.

The second form or category of deposits is the special deposit defined broadly as ". . . a delivery of money or other property to a bank for safe-keeping and return in kind. Title to the thing deposited remains in the depositor, and the bank becomes his agent, bailee, or trustee." 9 C.J.S. Banks and Banking § 274 (1938) at 562.

The third class or category of deposit is designated deposits for specific purpose. In general, a deposit for specific purpose is defined as follows: "A delivery of money or property to a bank for application to a particular specific purpose is not a general

deposit, nor is it, strictly speaking a 'special' deposit as that term is usually employed, but ordinarily it partakes of the nature of a special deposit in that title to the thing remains in the depositor and the bank becomes an agent, bailee, or trustee and not a debtor." 9 C.J.S. Banks and Banking § 275 (1938) at 570.

It is within this last definition that the funds pertaining to the case at hand fall.

The evidence shows defendant Williams, as a prerequisite to operating taxicabs upon the streets of intervenor-city, was required, in lieu of liability insurance, to place on deposit specified sums of money as reimbursement for damages for and as the result of the negligent operation of his taxicabs. The evidence further reveals defendant substantially complied with that prerequisite, the garnishee bank acknowledged such restriction by the typing upon the account card and further still, the evidence reveals the intervenor-city, by interdepartmental communication, acknowledged the limited deposit by defendant Williams.

In dealing with this question, our own courts appear to have combined the elements of deposits for a special purpose and special deposits, thus creating a broad category of special deposits. It has been held that, "Unless the deposit be special, such as a trust fund with the bank, or something kindred thereto, the deposit is general. In this connection plaintiff asserts there are three general classes of special deposits, namely: '(1) Where money or other thing is deposited with the understanding that that particular money or thing is to be returned to the depositer; (2) where the money or thing deposited is to be used for a specifically designated purpose; (3) and where the deposit itself was wrongful or unlawful.' " *Fred A. Boswell Post, Etc. v. Farmers' State Bank*, 61 S.W.2d 761, 762 (Mo.App. 1933).

The *Boswell* case addressed the question of priority of accounts upon the financial collapse of the bank and by its nature, is not controlling herein.

While no specific precedent is to be found within our own state, three additional cases must be referred to to illustrate the approach to the question by our courts.

In *Vandivort v. Sturdivant Bank*, 77 S.W.2d 484 (Mo.App.1934) (approved in *Security National Bank Savings & Trust Co. v. Moberly*, 340 Mo. 95, 101 S.W.2d 33 [1936]), the court declared at page 487:

"Whether or not the bank in fact commingles the deposit with its general funds and uses it as its own is not determinative of the right or not of the depositor to claim the deposit as a special deposit, but it is the right or not of the bank to so commingle and use the deposits that is determinative. If when the deposit is made there is an agreement, express or implied, that it shall not be commingled with the other assets of the bank and used as its own, but shall be kept intact as a separate deposit for a specific purpose, this constitutes a special deposit, and the fact that the bank without right commingles the deposit with its other assets and uses it as its own, so that it cannot thereafter be traced and identified, does not defeat the right of the depositor to have the amount of the deposit out of the assets of the bank."

While the *Sturdivant* case, in dealing with creditor claims against an insolvent bank defines the protected right of depositors for a special purpose, it does not directly reach the precise point in our case at hand. In the present case, it mattered little that monies might be commingled, but rather the precise nature or classification of the deposit is the question needful of being resolved.

Another case involves the liquidation of one bank, its takeover by a successor bank and the issue of insurance proceeds payable upon an act of burglary. The courts wrestled with the problem of special deposits. In *American Surety Co. v. Normandy State Bank*, 237 Mo.App. 39, 167 S.W.2d 436 (1943), we find a case where the State Bank of Anglum (St. Louis County) purchased a policy of insurance against loss by burglary. Subsequently, but while the policy of insurance was in full force, the Bank of Anglum

was taken over by the State Commissioner of Finance for purposes of liquidation. The Normandy Bank was named as special deputy commissioner in charge of the affairs of the Bank of Anglum. The policy of insurance was modified, naming the Normandy Bank as the insured. A burglary at the Normandy Bank occurred. The question then facing the court was whether the funds previously deposited in the Bank of Anglum became the property of the Bank of Normandy. To phrase the question yet another way, were the monies held previously by the Bank of Anglum and later taken over by the Normandy Bank special or general deposits? In its ruling, the court stated, at 441–442:

"It must be remembered that the commissioner of finance in charge of the affairs of an insolvent bank acts in an official capacity and under the supervision and direction of the court and the funds in his hands as commissioner when deposited in another bank by him are not subject to be checked out as in the case of ordinary deposits. In respect to the disbursement of the funds so deposited he is under the direction and supervision of the court . . .

Moreover, in this case all the parties concerned treated the fund deposited with the defendant bank as a trust fund belonging to the Anglum Bank. This they did by having the fund insured as the fund of the Anglum Bank. They thus evidenced an understanding that the title to the fund remained in the defendant bank in its official capacity as special deputy commissioner."

While the *American Surety* case is not dispositive of the case herein, it sheds light upon the question of deposits for a specific purpose.

In concluding the evidence in the case herein established a deposit for a specific purpose, no violation of the principles enunciated in the foregoing cases is created.

Absent specific precedent within the rulings of our own court, we look to other jurisdictions and as to how they have disposed of the issue. In 9 C.J.S. Banks and Banking, § 275 (1938) at 570–571, we find:

"A specific deposit, or deposit for a specific purpose, consists in the delivery of money or property to a bank for application to a designated object or a defined purpose . . . ."

It appears the factual situation of the case at hand falls precisely within the foregoing definition. As regards interpretation of that definition from other jurisdictions, see *Bank of West Orange v. Associates Discount Corporation,* 197 So.2d 858 (Fla.Dist. Ct.App. 1967) where the court held, "The purpose and terms of a special deposit may be fixed by express agreement, or the intention of the parties may be inferred from their declarations at the time the deposit was made when considered in connection with their conduct and all the other circumstances surrounding the transaction."

In *Bender v. Neillsville Bank of Neillsville,* 10 Wis.2d 282, 102 N.W.2d 744 (1960), the court held, at 746, "The first question presented is as to the nature of the bank account here involved. The trial court held it was a special account for a special purpose, and we agree. . . . 'It seems to be well settled that a deposit made in a bank for a specific purpose, and for that alone, partakes of the nature of a special deposit, and does not establish the relation of debtor and creditor between the depositor and the bank, but establishes a fiduciary relation which is sometimes declared to be that of principal and agent, while some courts hold that a trust relation is created.' "

Where intention of parties and circumstances surrounding transaction controls, see *Dunlop Sand & Gravel Corporation v. Hospelhorn,* 172 Md. 279, 191 A. 701 (1937).

The Supreme Court of Nebraska, in the case of *State ex rel. Sorensen v. American State Bank,* 126 Neb. 34, 252 N.W. 460 (1934) adopted language from a prior decision in *Officer v. Officer,* 120 Iowa 389, 94 N.W. 947, 948 (1903) which stated,

" 'A specific deposit exists when money or property is given to a bank for some specific and particular purpose, as a note

for collection, money to pay a particular note, or property for some specific purpose.' In·order to create a specific deposit, it is not necessary that the fund be kept intact as in the case of a special deposit, but it is sufficient if the deposit is made with the agreement or understanding with the bank that a sum equal to the deposit shall be forthcoming for the special purpose intended." *State ex rel. Sorensen v. American State Bank, supra* at 462 [1]

For additional decisions upon this point, see *Bank of America Nat. Trust & Savings Ass'n v. California Savings & Commericial Bank, et al.*, 218 Cal. 261, 22 P.2d 704 (1933); *Miller v. Andrew*, 206 Iowa 957, 221 N.W. 543 (1928); *Corporation Commission of North Carolina v. Merchants' Bank & Trust Co.*, 193 N.C. 696, 138 S.E. 22 (1927); and ·*Moore Mill & Lumber Co. ·v. Curry County Bank et al.*, 200 Or. 558, 267 P.2d 202 (1954).

■ The deposit herein is delineated as a deposit for a special purpose. It necessarily follows that the ultimate question of garnishment in aid of execution and its application or prohibition to or upon a deposit of such nature must be squarely determined.

Again, it is found there are no Missouri cases which address this specific point. Consideration of the issue encompasses general principles of the law such as is set forth in 38 C.J.S. Garnishment § 80 at 283:

"*Deposit for special purpose.* A special deposit expressly for a particular purpose cannot be diverted from such purpose by garnishment. When the deposit is set apart for a particular purpose according to express statutory sanction, it cannot be reached by garnishment at the instance of a general creditor."

Again, it is necessary to look to other jurisdictions to see how such questions have been answered, since research reveals our own courts have not been called upon to resolve the particular issue.

In *Iowa Mut. Liability Ins. Co. v. De La Hunt*, 197 Iowa 227, 196 N.W. 17 (1923), it was held,

"It is elementary that the lien of an attaching creditor attaches only to the interest of the debtor in the funds or property attached. In other words, the right of the appellant in this case to the garnished funds is no greater than that of appellee. Both are subordinate to any valid agreement between him and the bank that the fund will be paid out by the bank only for a specifically designated purpose. None of the cases cited by appellant hold to the contrary. The evidence does not show that appellee is insolvent, but there is sufficient shown to justify the inference that his contract with the city could be carried out only if he were permitted to use the money in controversy."

In *Geyer & Adams Co. v. Bank of Central Arkansas*, 170 Ark. 1016, 282 S.W. 358 (1926), the court held at 359,

"Appellant's last and chief contention for a reversal of the decree is that appellee had no lien whatever upon the general deposit of O. E. Hicks, and that none could be acquired under the doctrine of offset after the service of the writ of garnishment. There would be much in this contention if the deposit was general growing out of the relationship of debtor and creditor between O. E. Hicks and the appellee bank. This unconditional relationship did not exist, for, under the agreement, O. E. Hicks could not draw checks upon the fund for any purpose except to pay debts incurred in growing the 1923 rice crop. It is immaterial that the witnesses referred to the fund as a general deposit, for under the agreement it was deposited to the credit of O. E. Hicks by appellee for a special purpose, so neither O. E. Hicks nor his general creditors had any right to divert it. Certainly the garnisher, who is the appellant and plaintiff in this action, gained no greater right to or over the deposit that [sic] O. E. Hicks, and he was given authority to

---

1. However, this case criticized *In re State Bank of Elkhorn, Neb., Hanger et al. v. Luikart, Su-* *perintendent of Banks*, 129 Neb. 506, 262 N.W. 15 (1935).

use it for one purpose only. A restricted deposit is not subject to diversion by garnishment or other process, but must be used for the purpose made. In short, the fund was not subject to garnishment by the general creditors of O. E. Hicks. No lien was acquired upon it by the service of the writ; hence the court correctly dismissed the garnishment proceedings."

Having concluded the evidence establishes that the deposit made by defendant Williams was intended as a deposit for a special purpose and that the evidence establishes this was the agreement between intervenor-city and Williams for a deposit for a special purpose, it follows said deposit was not subject to garnishment by the general judgment creditor Collier and this cause is reversed.

■ There remains one additional question to resolve on this appeal, and that is the question of status of the $2,500 fee and cost allowance to the garnishee. In the first instance, the order granting such allowance was never appealed from by any of the parties and hence is therefore not a proper issue before this court. In further note on the point, the parties previously stipulated to the payment of said sum to the garnishee.

The issues in this cause are quite clear and future retrial is unwarranted, and for the foregoing reasons, this cause is reversed with directions to the trial court to enter judgment to the favor of appellants, defendant Williams and intervenor-city.